**In re RESOLUTION TRUST CORPORA-TION, Receiver for Horizon Federal Savings and Loan Association**

v.

**VILLA ESTE APARTMENTS PARTNERSHIP, A Louisiana Partnership, et al.**

**Civ. A. No. 92–283.**

United States District Court, E.D. Louisiana.

Oct. 19, 1992.

Daryl George Glorioso, Baldwin & Haspel and Robert John Skinner, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for plaintiff.

Peter J. Castano, New Orleans, La., for defendants.

McNAMARA, District Judge.

Before the court is the Motion of Resolution Trust Corporation [RTC] to Dismiss Counterclaim for Lack of Jurisdiction over the Subject Matter under Rule 12(b)(1) and Motion for Summary Judgment under Rule 56(a). Defendants have filed an opposition. The matter is before the court on briefs, without oral argument.

## FACTUAL SCENARIO

On August 23, 1983, Anne Barrios Gauthier, Wendell H. Gauthier, Sherolyn Di-Cristina Murphy, and Robert M. Murphy formed Villa Este Apartments Partnership. On August 24, 1983, the partnership, with the four individuals as guarantors, executed a pair of promissory notes in favor of New Orleans Federal Savings and Loan Association. The notes totalled $297,-800.00. Both notes were secured by a mortgage on a single piece of residential property in New Orleans.

On May 1, 1990, the partnership defaulted on their loan obligations. After amicable efforts to resolve the problem failed, the RTC, as receiver for Horizon Federal Savings and Loan Association, the successor to New Orleans Federal Savings and Loan Association sued the partnership and its constituency in this court.

The Defendants answered and counterclaimed against the RTC in its corporate capacity and against the United States. The essence of the counterclaim is that the RTC–Corporation sold at auction several

similar properties situated on the same street as the collateral property. Defendants claim that these sales drastically lowered the value of their property and prevented them from collecting sufficient rental income to cover the payments on their notes. Defendants allege that the actions of the RTC–Corporation breached certain unspecified "statutory and regulatory duties". *See* Counterclaim at ¶ IV.

## ANALYSIS

■ Initially, this court finds that a counterclaim against the RTC and the United States is procedurally incorrect. Counterclaims may only be brought against "opposing parties". *See* Fed.Rule of Civ.Pro. 13. The claim advanced by Villa Este Partnership is against the RTC in its corporate capacity and the United States. The "RTC" involved in this lawsuit is the RTC in its capacity as the Receiver of Horizon Federal Savings and Loan Association, not RTC–Corporation. The distinction between the two capacities of the RTC has been well documented. *See, e.g., Thurman v. FDIC,* 889 F.2d 1441, 1446 (5th Cir.1989), *reh'g denied,* 894 F.2d 1335 (5th Cir.1990); and *FDIC v. Abraham,* 439 F.Supp. 1150, 1151 (E.D.La.1977). The United States is not a party in any capacity. Therefore, neither the United States nor the RTC–Corporation are an opposing party and are not subject to a counterclaim in this suit.

Nevertheless, this court realizes that, were it to dismiss the "counterclaim" on that ground, Defendants could merely re-file the pleading styled as a third-party claim against the proper entity. In the interests of judicial efficiency, this court will adjudicate the matter as if Defendants had properly brought its claim.[1]

In their Opposition to the Motion to Dismiss, Defendants advance numerous theories upon which the RTC–Corporation may be liable to the Defendants. First, mention is made of a possible violation of the Takings Clause of the United States Constitution. *See* Opposition at p. 4. The counterclaim does not allege violations of the Constitution and no legal basis for this assertion is offered. Nor could any legal basis for a violation of the Takings Clause be asserted under the circumstances of this case.

■ Second, Defendants argue that the RTC–Corporation breached its general "obligations of good faith and fair dealing" with the partnership. *See* Opposition at p. 5. Again, no such allegations are contained in the counterclaim. Moreover, the RTC–Corporation has never had any dealings with the partnership or its members of which this court is aware. Therefore, no obligation of good faith or fair dealing could possibly exist.

Third, specific obligations of good faith and fair dealing are raised under the argument that the RTC–Corporation breached Louisiana Revised Statute 10:3–606(1)(b) and 10:9–207(1). These provisions concern the unjustifiable impairment of collateral and the care and preservation of collateral by the holder of a negotiable instrument. Of course, the RTC–Corporation was not a party to the promissory notes at issue and never possessed the partnership's collateral.[2] Simply, the RTC–Corporation is not a holder of the instruments. Therefore, these provisions are inapplicable.

Furthermore, given the distinction between the two entities of the RTC, a ruling by this court that the RTC–Corporation owed the partnership a duty to protect the value of the collateral property would be ludicrous. It is entirely unthinkable, not to mention undesirable, that a seller of property has a duty to protect the value of all similar property. Market prices would be driven by the highest price paid, not the lowest price available.

---

1. This court recognizes that the RTC–Corporate entity is not represented in this litigation. However, RTC–Receiver has adequately briefed the issues on behalf of the absent party.

2. In fact, the RTC–Corporation never possessed the collateral property. (Nor did the RTC–Re-

ceiver). Defendants at all times controlled the collateral property. The week before this lawsuit was filed, the partnership sold the property. *See* Exhibit B attached to Defendants' Opposition.

Next, Defendants point to 12 U.S.C. § 1441a(b)(3)(C) as the source of a duty imposed on the RTC–Corporation to protect the value of their property. That statute states that:

The duties of the Corporation shall be to carry out a program, ..., including:

(C) To conduct the operations of the Corporation in a manner which—

(i) maximizes the net present value from the sale or other disposition of institutions ... or the assets of such institutions;

(ii) minimizes the impact of such transactions on local real estate and financial markets; ...

(v) maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals.

Clearly, this section provides guidance to the RTC in executing its mission. However, what the statute does not do is explicitly create a cause of action for an alleged violation of this section. Therefore, to allow Defendants' claim to move forward, this court must find an implied right of action in the statute. No such action exists.

■ The United States Supreme Court has defined the factors that a district court should examine to determine if a statute creates an implied right of action. *See Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Four questions must be asked:

(1) is plaintiff (here, Defendants) one of the class for whose special benefit the statute was enacted?

(2) is there any indication of legislative intent either to create such a remedy or deny one?

(3) is it consistent with the underlying purposes of the legislative scheme to imply a remedy for the plaintiff?

(4) is the cause of action one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law?

■ First, Congress did not pass the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 to benefit Defendants. Rather, the statute creating the RTC provides a "comprehensive scheme for dealing with the adjudication of the claims of *creditors* of insolvent financial institutions." *RTC v. Elman*, 761 F.Supp. 245, 249 (S.D.N.Y.1991), aff'd, 949 F.2d 624 (2d Cir.1991) (emphasis added). Obviously, Defendants are not creditors of Horizon Federal.

Second, Defendants have not cited, and this court does not find, anything in the legislative history of the statute (or any of the related statutes) indicates that Congress even considered creating a cause of action in favor of Defendants. Rather, the statute calls for "Congressional oversight of the RTC and provides measures to prevent dumping of thrift asset (sic) at deeply discounted prices." H.R.Rep. No. 54(I), 101st Cong., 1st Sess. (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 104. No mention is made of employing the public as a watchdog by creating a private right of action against the agency.

Third, by creating the RTC via the FIRREA, Congress intended "to contain, manage, and resolve failed savings associations" (*Id.* at 118) and "to promote a safe and stable system of affordable housing finance through regulatory reform." *Id.* at 206. The underlying purpose was not to arm private citizens with a legal weapon to wield against the RTC. Congress was focussing on the "early detection of problems in financial institutions and the prevention of losses to the deposit insurance funds and the U.S. Treasury." *Id.* at 106. In fact, in light of the "S & L Crisis," the House Banking Committee adopted "Never Again" as the theme of their deliberations. *Id.* Obviously, Congress was not concerned with Defendants' particular problems.

Finally, Defendants point to federal law as the most likely source of a duty imposed on the RTC–Corporation to safeguard the partnership's assets. Therefore, question # 4 is not applicable to this analysis.

Typically, a district court faced with the standard four-factor test finds itself balancing varying interests and information. This is not the typical case. Here, each factor weighs in favor of finding that no private right of action was created by the statute. There is no express creation and Congress did not imply one either. Therefore, this court finds that the FIRREA does not create a private right of action in favor of Defendants against the RTC–Corporation.[3]

As for the RTC's Motion for Summary Judgment, this court finds that under Federal Rule of Civil Procedure 56[4] and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment should be granted in favor the RTC. Defendants only dispute the amount due on the notes to the extent their counterclaim is successful. No other issue clouds the case. Given the dismiss of the counterclaim by this order, the matter is now ripe for summary judgment. Accordingly;

IT IS ORDERED that the Motion of the RTC to Dismiss Counterclaim is GRANTED. IT IS FURTHER ORDERED that the RTC's Motion for Summary Judgment be GRANTED. Counsel for the Plaintiff shall present this court with a proposed judgment in conformity with this order.

---

**3.** However, even if this court had found an implied right of action, no such claim could be brought against the RTC–Corporation without the consent of that entity. The Federal Tort Claims Act, 28 U.S.C. § 1346 et seq., gives the federal courts exclusive jurisdiction over tort suits against the Government (and its agencies) when the action of the government employee would be actionable if he were a private citizen. However, the FTCA excepts suits arising out of the exercise of statutory or regulatory duties or discretionary functions. 28 U.S.C. § 2680(a). The Supreme Court has held that the "discretionary functions exception" extends to "actions of government agents involving necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations." *U.S. v. Gaubert,* —— U.S. ——, ——, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991). The exception was created to "prevent judicial 'second-guessing' of legislative and administrative decisions ... through the medium of an action in tort." *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

**4.** Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."