**Franklin L. HANEY, an individual, d/b/a The Franklin L. Haney Company, a sole proprietorship, Plaintiff,**

**v.**

**CASTLE MEADOWS, INC., a California corporation, Resolution Trust Corporation, in its capacity as Receiver for Lincoln Savings and Loan Association, F.A., Resolution Trust Corporation, in its Corporate capacity, Resolution Trust Corporation, Defendants.**

Civ. A. No. 93–K–322.

United States District Court, D. Colorado.

March 19, 1993.

Lisa Hogan, Denver, CO, for plaintiff.

John Bernstein, Ann Hopfenbeck, Denver, CO, for defendants.

## ORDER DISSOLVING ATTACHMENT

KANE, Senior District Judge.

This is a diversity action for fraudulent and negligent misrepresentation, breach of contract and outrageous conduct arising from a failed real estate transaction. The plaintiff, Franklin Haney, entered into two successive contracts with Castle Meadows, Inc. ("CMI"), a wholly-owned subsidiary of Lincoln Savings and Loan Association, to purchase certain real property known as the "Meadows" in Douglas County, Colorado and related bonds. Lincoln Savings is in receivership with the Resolution Trust Corporation

("RTC"). The RTC appears in this action both in its corporate and receiver capacities.

For reasons not revealed in the complaint, Haney did not close on the first contract and shortly thereafter entered into the second contract. Before the second contract was to close, however, he learned that water from a well on the property consistently tested positive for excessive radioactivity. Haney then gave CMI notice of his termination of the second contract. He later found out that some of the property was also in a floodplain. Haney seeks more than $2,390,000 in damages relating to his termination of the second contract in the nature of forfeited fees, a downpayment, and other costs.

On March 9, 1993, Haney moved for a temporary restraining order against CMI and the RTC on the grounds that CMI had contracted to sell the Meadows and that CMI and the RTC intended to forward the proceeds from the sale to third parties, leaving CMI without any assets. I denied that motion. The same day, Haney also moved for prejudgment attachment of CMI's assets under Colo.R.Civ.P. 102. I issued writs of attachment and writs of garnishment in aid of attachment the following day. CMI and the RTC filed a traverse to Haney's motion for prejudgment attachment on March 11, 1993, and the matter is now at issue.

CMI and the RTC traverse the motion on two grounds. First, they argue that Haney has failed to establish "cause" for issuance of the writs as defined in Rule 102(c). Second, they cite two sections of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") which allegedly prohibit the attachment of assets held by the RTC. *See* 12 U.S.C. §§ 1821(d)(13)(C), 1825(b)(2).[1] Because I conclude that Haney has not sustained his burden to establish "cause" for the attachment, I need not reach the latter issue.

Under Colo.R.Civ.P. 102, a party asserting a claim for damages sounding in contract or tort may seek prejudgment attachment of the defendant's assets. *See* Colo.R.Civ.P. 102(a). To obtain a prejudgment attachment under this rule, the plaintiff must file an affidavit with the court stating

> that the defendant is indebted to the plaintiff, or that the defendant is liable in damages to the plaintiff for a tort committed against the person or property of a resident of this state, stating the nature and amount of such indebtedness or claim for damages and setting forth facts showing one or more of the causes of attachment of section (c) of this Rule.

*Id.* 102(b). The "causes of attachment" identified in subsection (c) of the rule are fairly specific, and there must be a "reasonable probability" that any one or more of them exist. *Id.* 102(c). At any time before trial, however, the defendant may by affidavit traverse and put in issue the matters alleged in the plaintiff's affidavit. *Id.* 102(n)(1). If after hearing on the traverse the plaintiff fails to prevail, he is liable to the defendant "for any damages sustained as a result of the issuance of process, costs, and reasonable attorney's fees." *Id.* 102(n)(2).

In his affidavit supporting the motion for prejudgment attachment, Haney alleges that CMI is in the process of or has already transferred the proceeds from the sale of the Meadows to third parties so as to hinder or delay him from executing any judgment he may eventually obtain. Haney states that he

> believe[s] that CMI and RTC intend to distribute the proceeds of this sale out of CMI and RTC to third party creditors within and without the state as soon as possible in an effort to place these proceeds beyond my reach. These cash proceeds are of crucial importance to me since CMI is essentially an empty shell once the Meadows is sold. Without these cash proceeds CMI will be unable to honor any judgment that is rendered against it.

(Haney Aff. at 5–6.) By these allegations, Haney attempts to show "cause" for the attachment based on actual or anticipated

---

1. Under 12 U.S.C. § 1821(d)(13)(C), "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." Likewise, 12 U.S.C. § 1825(b)(2) provides that no property of the RTC, when acting as a receiver,

"shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [RTC], nor shall any involuntary lien attach to the property of the [RTC]." Haney disputes whether CMI is an asset of the RTC.

fraudulent conveyance or an attempt to hinder or delay a creditor. *See* Colo.R.Civ.P. 102(c)(4)–(7).

Defendants claim that there is no factual basis to Haney's contention that CMI was in the process of transferring all its assets to other creditors to hinder or delay Haney's collection of any eventual judgment. They submit the affidavit of Bart Jones, president of CMI, who states on personal knowledge that the sale of the Meadows was closed on March 5, 1993, that CMI and other Lincoln Savings subsidiaries filed for bankruptcy in 1989 and are obligated under joint plans of reorganization to make certain contributions for bankruptcy claims, and that "CMI has substantial total assets that greatly exceed its direct liabilities from bankruptcy creditors and post-bankruptcy creditors, without taking into consideration proceeds it received from the sale of the Meadows" with which it could pay the damages Haney alleges. (Jones Aff. at 2–3.)

To sustain the attachment Haney has the burden of establishing by a preponderance of the evidence that there is a reasonable probability that CMI made or intended to make a fraudulent conveyance or intended to make collection more difficult for him. *See First Nat'l Bank of Ft. Collins v. Poor,* 29 P.2d 713, 714 (Colo.1934). Although Haney need not establish CMI acted with a dishonest motive or with the intent to deprive him of his ability to ever realize on his claim, Haney must still demonstrate that CMI at least intended to hinder or delay him from collecting on a judgment. *See Crow–Watson Properties, Inc. v. Carrier,* 719 P.2d 365, 367 (Colo.App.1986). Haney has not done so.

First, the weight of the evidence does not establish that CMI would be an empty shell if the proceeds from the Meadows sale were disbursed. While Haney alleges that CMI has only limited financial assets, the affidavit of CMI's president indicates that it has sufficient funds to pay a judgment excluding the proceeds from the sale of the Meadows. Furthermore, CMI's sale of the Meadows does not show an intent to hinder or delay Haney. CMI and the RTC's clear intent throughout had been to liquidate this asset. Once Haney gave notice of termination of the second contract, nothing prevented CMI from continuing its efforts to sell the Meadows to a willing buyer.

Accordingly, Haney has failed on his burden of proof to establish a reasonable probability that "cause" exists for issuance of the writs, and the attachment is DISSOLVED. Defendants request an award of attorney fees and costs under Rule 102(n)(2). They shall submit an affidavit setting forth their reasonable costs and fees on or before March 29, 1993. Haney may respond to the affidavit on or before April 8, 1993. In the event of a dispute over costs or fees, the matter will be set for hearing.

