Franklin L. HANEY, an individual, d/b/a The Franklin L. Haney Company, a sole proprietorship, Plaintiff,

v.

CASTLE MEADOWS, INC., a California corporation, Resolution Trust Corporation, in its capacity as Receiver for Lincoln Savings and Loan Association, F.A., Resolution Trust Corporation, in its Corporate capacity, Resolution Trust Corporation, Defendants.

Civ. A. No. 93–K–322.

United States District Court,
D. Colorado.

Nov. 30, 1993.

John H. Bernstein, Tana K. Simard, Kutak Rock, Denver, CO.

Lisa Hogan, Robert C. Troyer, Brownstein, Hyatt,, et al. Denver, CO.

Ann.E. Hopfenbeck, Powers Phillips, et al. Denver, CO.

Joseph P. Martinez, Denver, CO.

## ORDER ON MOTIONS TO DISMISS

KANE, Senior District Judge.

This matter is before me on the separate motions to dismiss by defendants Castle Meadows, Inc. ("CMI"), the Resolution Trust Corporation in its corporate capacity ("RTC Corporate") and the Resolution Trust Corporation in its capacity as receiver of the Lincoln Savings and Loan Association, F.A. ("RTC Receiver"). Each defendant asserts separate reasons why the complaint, or certain claims therein, should be dismissed. For the reasons outlined below, I grant CMI's motion to dismiss in part and deny it in part, grant RTC Corporate's motion to dismiss, and deny RTC Receiver's motion to dismiss for lack of subject matter jurisdiction and motion to dismiss and/or strike claims for rescission and exemplary damages.

### I. *Background.*

Haney's claims arise out of a failed real estate transaction in which Haney had contracted to purchase a parcel of land commonly referred to as "the Meadows" from CMI and RTC Receiver.[1] On November 7, 1991, Haney, CMI and RTC Receiver entered into

---

1. CMI is a wholly owned subsidiary of Lincoln Savings, an institution in receivership with RTC Receiver.

a purchase agreement (the "1991 Agreement"). Haney agreed to purchase the Meadows and related general obligation bonds for $54 million dollars. Under the 1991 Agreement, Haney paid a non-refundable fee of $750,000 and a downpayment of $1,250,000. For reasons not explained in the complaint, that agreement was never consummated.

In December, 1992, the parties entered into a second purchase and sale agreement for the property (the "1992 Agreement"). Under the 1992 Agreement, the price for the property dropped to $29 million dollars. Haney again paid a non-refundable fee, this time of $290,000, and a downpayment of $1,160,000.

Shortly before the January 26, 1993 closing date, Haney learned from a third party that a well on the property (the "A-6 Well") was contaminated by significant levels of radioactive compounds. CMI did not disclose this problem to Haney, despite the fact that the A-6 Well was shown as part of the water source for the Meadows. Upon learning of the contamination of the A-6 Well, Haney gave CMI notice that he was terminating both the 1991 and 1992 Agreements and requested a refund of the amounts he had prepaid to date. CMI refused to acknowledge rescission of the Agreements or to refund these sums. After the notice of rescission, Haney learned that at least one Federal Emergency Management Agency (FEMA) floodplain ran through the Meadows property.

On February 9, 1993, Haney commenced this diversity action against CMI. Both the 1991 and 1992 Agreements were attached to and incorporated by reference into the complaint.[2] On March 9, 1993, he amended his complaint, naming RTC Receiver and RTC Corporate as additional defendants. Haney alleges the following six claims against CMI: (1) fraudulent misrepresentation relating to the A-6 Well contamination, (2) negligent misrepresentation relating to the A-6 Well contamination, (3) fraudulent misrepresentation relating to the existence of one or more FEMA floodplains, (4) negligent misrepresentation relating to the existence of one or more FEMA floodplains, (5) breach of contract as to both the 1991 and 1992 Agreements and (6) outrageous conduct. Only the breach of contract claim is alleged against RTC Receiver and RTC Corporate. Haney voluntarily dismissed a seventh claim for injunctive relief.

On March 9, 1993, Haney moved for a temporary restraining order and for prejudgment attachment of CMI's assets under Colo. R.Civ.P. 102. I denied these motions. *See Haney v. Castle Meadows, Inc.*, 816 F.Supp. 655 (D.Colo.1993). On April 26, 1993, the defendants filed the instant motions to dismiss. CMI argues that Haney's negligent misrepresentation claims are insufficient as a matter of law, that contract language in the 1991 and 1992 Agreements precludes his fraudulent misrepresentation claims, and the allegations fail to support a claim for outrageous conduct. RTC Corporate argues that it is not a proper defendant in this lawsuit because it had no involvement in the transactions at issue. Finally, RTC Receiver argues that Haney must exhaust his administrative remedies before proceeding against it and that federal law bars Haney's claims for rescission and punitive damages.

■ In considering these motions to dismiss, I accept the allegations as true and construe them in the light most favorable to Haney. *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991). Dismissal of Haney's claims is proper only if he can prove no set of facts in support of his claims to entitle him to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1551 (10th Cir.1992).

## II. *Merits.*

### A. *CMI's Motion to Dismiss.*

■ CMI makes three arguments in its motion to dismiss. First, relying on *Burman*

---

**2.** These documents are part of the complaint, *see* Fed.R.Civ.P. 10(c), and may be considered on a motion to dismiss, *see* 5 Charles A. Wright & Arthur A. Miller, *Federal Practice & Procedure* § 1327 at 764–65 (1990). Neither copy, however, was fully executed. Only the signature of Haney appears; signature lines for CMI and RTC Receiver are blank. Defendants have not contested the authenticity of these documents in their motions to dismiss and, in fact, rely on language therein in urging dismissal.

*v. Richmond Homes Limited,* 821 P.2d 913 (Colo.App.1991), CMI asserts that Haney cannot as a matter of law state a claim for negligent misrepresentation based on CMI's failure to disclose information about the A–6 Well and FEMA floodplains, Haney's second and fourth claims for relief. Under CMI's interpretation of *Burman,* a claim for negligent misrepresentation can only be based on the actual communication of information, not the failure to communicate. In other words, CMI maintains, there is no tort in Colorado for negligent concealment.

In *Burman,* the Colorado Court of Appeals upheld the trial court's order granting summary judgment against the plaintiffs, purchasers of real property, on their claims for negligent misrepresentation against the vendors, brokers and a title company. After the plaintiffs closed on the property, they learned that it was included within a general improvement district and thus subject to additional taxes. As to the vendor and the title company, the court held that the plaintiffs had failed to allege that these defendants had supplied false information, a necessary element of a claim for negligent misrepresentation. *See id.* at 919, 921.

In *Burman,* the information not disclosed was the existence of a general improvement district. The court rejected the plaintiffs' contention that in that case the vendor had a duty, under *Cohen v. Vivian,* 141 Colo. 443, 349 P.2d 366 (1960), to disclose this condition because it was not a latent one involving a physical defect as in *Cohen.* But unlike *Burman,* this case does involve allegedly latent conditions: a radioactive well and one or more floodplains. *See Schnell v. Gustofson,* 638 P.2d 850, 851–52 (Colo.App.1981) (radioactive mine tailings under home a latent condition which the vendor had duty to disclose); *Robbins v. Marchant,* 1 Ark.App. 211, 616 S.W.2d 736, 737 (1981) (sellers liable to purchasers for damages by failing to disclose that property lay in a floodplain); *Klott v. Associates Real Estate,* 41 Ohio App.2d 118, 122, 322 N.E.2d 690, 693 (1974) (contaminated well an example of a dangerous latent defect in property). Thus, the question here is whether a vendor can be held liable for negligence in failing to disclose these conditions. Neither CMI nor Haney adequately address this question.

My review of Colorado law and the law of similar jurisdictions leads me to conclude that a claim for negligent concealment is a legal impossibility in the vendor/purchaser context. In contrast to cases involving an affirmative misstatement or misrepresentation as to the condition of property, in which a seller's knowledge of the condition is generally irrelevant, when concealment of a latent condition is relied upon, "knowledge of the facts by the party who is claimed wrongfully to have withheld information is essential, in order to affect the validity of the sale." 91 C.J.S. Vendor and Purchaser § 67 at 939 (1955). Likewise as explained in *Cohen,* the seller's duty to disclose in Colorado rests on the fact that the seller has knowledge of a latent defect:

> We are here dealing with a latent condition from the standpoint of the [purchasers]. It became the equivalent of a patent condition to the [sellers] by virtue of the discovery that it was filled ground. A latent soil defect, known to the seller of a house built on such soil, creates a duty of disclosure in the seller. His failure to disclose amounts to concealment, making him vulnerable to a suit based in fraud.

349 P.2d at 367; *see also* Restatement of Torts (Second) § 551 (1977) (liability for nondisclosure requires that the nondisclosing party know of a fact that may justifiably influence another's actions).

Thus, because the seller's knowledge of the condition is an essential element of a claim based on concealment, the case becomes one sounding in fraud, not negligence. *See Brewer v. Brothers,* 82 Ohio App.3d 148, 152–53, 611 N.E.2d 492, 494–95 (1992); *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188, 193 (1989) (fraud in vendor/purchaser context arises where there is knowledge and concealment of condition). Therefore, I conclude, as have other courts, that there is no tort for negligent concealment in the vendor/purchaser context. *See also Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 504 (S.D.1990) ("Although South Dakota recognizes actions for negligent misrepresentation, there is no cause of action for negligent nondisclosure.");

*Nelson v. Cheney,* 224 Neb. 756, 401 N.W.2d 472, 476 (1987) ("Although an action for fraudulent concealment is sometimes referred to as an action for fraudulent representation by suppression or concealment, we do not believe it wise or good public policy to adopt a theory of negligent concealment in the vendor/purchaser setting.")

■ Even assuming Colorado would recognize a cause of action for negligent concealment, Haney's second and fourth claims are negated by language in the contract which provides that he takes the property "as is." This language, substantially the same in both the 1991 and 1992 Agreements, consists of: (1) a broad disclaimer of "no representations and warranties" as to the condition of the Meadows and Haney's acceptance of the Agreements based on his own inspection of the property, (2) an "as is" and release of liability clause and (3) a recital that the Agreements were made among "financially sophisticated and knowledgeable parties." Language in a contract providing that the purchaser takes the property "as is" places the risk on the purchaser as to the existence of latent defects as to which neither party had knowledge. *See, e.g. Brewer,* 611 N.E.2d at 494. Therefore, if CMI did not know of the floodplains or the contamination of the A–6 Well, it had no duty to disclose and the risk as to such defects was contractually shifted by the parties to Haney. For these reasons, Haney's first and third claims for negligent concealment are legally insufficient.

■ CMI further argues, however, that the same "as is" language in the 1991 and 1992 Agreements also relieved it of the duty to make such a disclosure of known latent defects, thereby obviating its liability on the first and third claims for fraudulent misrepresentation or fraudulent concealment. I disagree. While the parties can contractually alter the allocation of risk as to defects of which neither party has knowledge, a seller who actually knows there is a latent defect on the property and chooses not to reveal this to the purchaser cannot hide behind contract language purporting to shift the risk of nondisclosure to the purchaser. *Id.* 611 N.E.2d at 495.

The express language of *Cohen v. Vivian* reflects this principle. First, CMI cannot escape liability by relying on Haney's agreement to undertake his own inspection of the property. "An inspection by a purchaser which does not disclose [a defect] does not render inapplicable the rule requiring disclosure of a latent defect." 349 P.2d at 368. This is the only logical result. A latent defect by its very nature cannot be discovered by inspection. In the same way, language essentially reiterating the doctrine of caveat emptor will not defeat this duty. *See id.* 349 P.2d at 367. ("Caveat emptor ... is a pervious shield affording no protection to the seller.") Thus, "as is" clauses and "no representations or warranties" provisions have been held ineffective to protect a seller or other party which has knowledge of a latent defect but fails to disclose it to the purchaser. *See generally* Frank J. Wozniak, Annotation, *Construction and Effect of Provision in Contract for Sale of Realty by Which Purchaser Agrees to Take Property "As Is" or in its Existing Condition,* 8 A.L.R.5th 312 (1992).

Looking to the facts alleged in this case, Haney has plead that CMI knew of the problem with the A–6 Well during his investigation of the Meadows. (*See* First Am.Compl. ¶ 24.) Likewise, he has alleged that CMI was aware and intentionally concealed the existence of at least one FEMA floodplain during this time. (*See id.* ¶ 35.) Thus, his first and third claims for relief based on the fraudulent concealment of latent defects, of which CMI allegedly had knowledge, are not deficient.

■ CMI finally argues that Haney's allegations fail to state a claim for outrageous conduct. In Colorado, to prevail on such a claim, the plaintiff must show that the defendant, "by extreme and outrageous conduct, intentionally or recklessly caused him or her severe emotional distress. Outrageous conduct is that which is so outrageous and extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Corcoran v. Sanner,* 854 P.2d 1376, 1381 (Colo.App.1993). I must determine as a matter of law whether reasonable persons could

disagree on whether CMI's conduct was outrageous. *Ellis v. Buckley,* 790 P.2d 875, 877 (Colo.App.1989), *cert. denied* (Colo. Apr. 30), *cert. denied,* 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 249 (1990).

Here, the events of which Haney complains, namely the Defendants failure to disclose that the Meadows lay in a floodplain and that the A–6 Well was contaminated, simply do not rise to the level of outrageous conduct. First, CMI's failure to disclose the existence of the floodplain cannot be considered atrocious and utterly intolerable behavior. *See Caddel v. Gates,* 284 S.C. 481, 327 S.E.2d 351, 353 (1984) (failure to discover undisclosed easement in title search not outrageous conduct). Likewise, the company's failure to inform Haney of the contamination of the A–6 Well was not outrageous conduct. While in some cases a party's actions in intentionally exposing another to hazardous substances can constitute outrageous conduct, *see, e.g., Field v. Philadelphia Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1182–83 (1989) (workers stated claim based on defendant company's intentional venting of radioactive steam at them in order to keep reactor operational), in cases where there is no evidence of reckless or actual exposure, such a cause of action fails, *see, e.g., Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 85–87 (3d Cir.1987) (manufacturer's failure to warn of potential danger of indirect exposure to asbestos not outrageous conduct); *Montana Pole & Treating Plant v. I.F. Laucks & Co.,* 775 F.Supp. 1339, 1349 (D.Mont.1991) (no claim based on chemical manufacturer's marking of wood preservative which contaminated property of wood treatment facility), *aff'd,* 993 F.2d 676 (9th Cir. 1993). CMI's alleged tortious actions simply to not rise to the level of outrageous conduct as this term has been construed in Colorado and other jurisdictions. CMI's motion to dismiss the sixth claim for outrageous conduct is granted.

### B. *RTC Corporate's Motion to Dismiss.*

■ RTC Corporate moves to dismiss the breach of contract claim against it, arguing that it is a completely separate legal entity from RTC Receiver and that it had no role in this dispute. In his response to this motion, Haney claims that the RTC can be held liable in its "individual" capacity for breaching the Agreements and equates this capacity to RTC Corporate. Haney's analysis is incorrect.

■ Haney ignores statutory language and abundant case law establishing that the RTC performs distinct functions in its receiver and corporate capacities. *See Resolution Trust Corp. v. Villa Este Apartments Partnership,* 806 F.Supp. 594, 598 (E.D.La.1992) ("The distinction between the two capacities of the RTC has been well documented.") In the former capacity, the RTC marshals assets of failed institutions for the benefit of its creditors and, in the latter, it acts as overseer of insured depository institutions. *Resolution Trust Corp. v. Ryan,* 801 F.Supp. 1545, 1558 (S.D.Miss.1992). In this case, none of the allegations involve the actions of RTC Corporate; it was not a party to the 1991 and 1992 Agreements and none of its statutory activities are involved. Where, as here, the RTC in its corporate capacity has had no dealings with the plaintiff and was not a party to the transactions or obligations in question, there no cause of action against it. *Villa Este Apartments,* 806 F.Supp. at 596; *Ryan,* 801 F.Supp. at 1558. Accordingly, RTC Corporate's motion to dismiss is granted.

### C. *RTC Receiver's Motion to Dismiss.*

■ RTC Receiver first moves to dismiss the breach of contract claim against it for lack of jurisdiction, arguing that Haney has failed to exhaust his administrative remedies as required by 12 U.S.C. § 1821(d)(13)(D). Under that statute, claims against the RTC in its receivership capacity must first be presented to the RTC for its consideration. Haney initially attempted to avoid the exhaustion requirement by arguing that this statute does not apply because he is not seeking a judgment solely against the assets of Lincoln Savings, the failed institution for which RTC Receiver is acting as receiver, but a judgment against the assets of the RTC itself. Yet the express language of the statute includes both claims against the assets of the failed institution, and "any claim relating to

any act or omission of the institution *or the Corporation.*" *Id.* § 1821(d)(13)(D)(ii) (emphasis added). Therefore, Haney's breach of contract claim against RTC Receiver is subject to the exhaustion requirement. *See Ryan*, 801 F.Supp. at 1557 (claim for conversion against RTC barred under 1821(d)(13)(D)(ii)).

Since the briefing of this motion, however, Haney has moved to amend his complaint to allege exhaustion under § 1821(d)(13)(D). He presented his claim against the RTC as required by the exhaustion statute and contends that, by failing to take action within six months, the RTC has effectively denied the claim, giving this court jurisdiction. While RTC Receiver apparently objects to Haney's motion to amend on other grounds (which I will consider in a separate order on Haney's motion to amend), it concedes that its motion to dismiss based on lack of jurisdiction for failure to exhaust is now moot. (*See* RTC Receiver's Mot. Dismiss Claims for Rescission & Exemplary Damages, ¶ 2.) Therefore, RTC Receiver's motion to dismiss for lack of jurisdiction is denied as moot.

█ RTC Receiver also moves to dismiss Haney's claims for rescission and exemplary damages, arguing they are barred by federal statutory and common law. First, RTC Receiver contends that the equitable remedy of rescission is precluded by 12 U.S.C. § 1821(j), which bars the court from taking "any action ... to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." Haney responds that his rescission claim, contained in his prayer for relief, is simply a request for an alternative measure of damages based on rescission, as opposed to enforcement, of the 1991 and 1992 Agreements, and is not a claim for affirmative equitable relief. Therefore, Haney maintains, the request for rescission is not barred by § 1821(j).

I agree with Haney's interpretation of the complaint. Paragraph 59(d) of the complaint prays for

rescission of the 1991 and 1992 Agreements, for damages consisting of the non-refundable fees and forfeited down payment in connection with the 1991 Agreement, and the forfeited non-refundable fee

in connection with the 1992 Agreement, fees incurred in connection with the performance of [Haney's] investigation, lost profits, attorneys fees, exemplary damages, pre- and post-judgment interest,

and other relief as deemed appropriate. Haney had additionally asserted a seventh claim for relief in which he sought a temporary restraining order and preliminary injunction against CMI and the RTC. This claim, since voluntarily dismissed, would have been subject to the restrictions of § 1821(j), as it clearly would have interfered with RTC Receiver's ability to carry out its statutory functions. On the other hand, Haney's prayer for rescission does not in any way change the status quo, since the 1991 and 1992 Agreements have been effectively treated by the parties as of no effect, and CMI and RTC Receiver have sold the Meadows to a third party. For this reason, Haney's request for damages premised on rescission is not barred by § 1821(j).

Second, RTC Receiver argues that any claim against it for exemplary damages is barred by common law and by 12 U.S.C. § 1825(b)(3), which exempts the RTC when acting as a receiver from any liability for punitive assessments. Haney does not dispute this proposition, but states affirmatively that he does not seek punitive damages from RTC Receiver, since he alleges only a breach of contract claim against RTC Receiver, for which exemplary damages are not available. This being the case, RTC Receiver's motion to dismiss the claim for punitive damages is likewise denied. Accordingly,

IT IS ORDERED THAT CMI's motion to dismiss is GRANTED as to the second and forth claims for negligent concealment and as to the sixth claim for outrageous conduct and is DENIED as to the first and third claims for fraudulent concealment, and

IT IS FURTHER ORDERED THAT RTC Corporate's motion to dismiss is GRANTED; and

IT IS FURTHER ORDERED THAT RTC Receiver's motion to dismiss for lack of jurisdiction and motion to dismiss claims for rescission and exemplary damages are DENIED, and

IT IS FURTHER ORDERED ·THAT Haney's motion for oral argument on the motions to dismiss is DENIED.