944 F.Supp. 787 (1996)
CROSS OIL COMPANY, et al., Plaintiffs,
v.
PHILLIPS PETROLEUM COMPANY, Defendant.
No. 4:95CV1380-DJS.
United States District Court, E.D. Missouri, Eastern Division.
October 11, 1996.
*788 John F. Arnold, Joan M. Swartz, Nelson G. Wolff, Lashly and Baer, St. Louis, MO, for plaintiffs.
Ian P. Cooper, Richard J. Paulter, Peper and Martin, St. Louis, MO, for defendant.

ORDER
STOHR, District Judge.
Pending before the Court is defendant's motion to dismiss and motion to strike certain portions of plaintiffs' first amended complaint. Plaintiffs filed their first amended complaint in seven counts and seek to recover expenses incurred in cleaning up environmental contamination on property they acquired from defendant on or about June 1, 1977.

A. Standard When Ruling on a Motion to Dismiss
In ruling on defendant's motion to dismiss for failure to state a claim, the Court must view the facts alleged in the complaint in the light most favorable to plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A motion to dismiss will not be granted merely because the complaint does not state with precision every element necessary for recovery. A complaint is sufficient if it "contain[s] allegations *789 from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 5 Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 1216, at 159. A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Hungate v. United States, 626 F.2d 60, 62 (8th Cir.1980). For the purpose of defendant's motion to dismiss, the Court takes all facts alleged in plaintiffs' amended complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir.1990).

B. Plaintiffs' Allegations
On or about June 1, 1977, Herbert A. Cross and Delores B. Cross acquired certain realty situated in St. Louis County, Missouri ("the Property") from defendant. The Property was subsequently transferred to the Herbert A. Cross Revocable Living Trust. At all times during ownership by Herbert A. Cross, Delores B. Cross and the Revocable Living Trust, Cross Oil Company operated the Property. Prior to July 1, 1977, defendant owned the Property and operated a gasoline station and underground storage tanks on the Property.[1]
In October of 1991, Cross Oil Company learned by virtue of an environmental site assessment that some hydrocarbon contamination was present underneath the Property. The hydrocarbons constitute hazardous wastes. At no time prior to plaintiffs' acquisition of the Property did defendant disclose to plaintiffs the existence of any contamination upon the Property. A bioremediation plan has been implemented at the Property and is ongoing. The plan received approval of the Missouri Department of Natural Resources. Plaintiffs have incurred expenses in excess of $350,000 relating to cleanup of the hydrocarbon contamination underneath the Property.

C. Plaintiffs' Amended Complaint

Counts I and II
In Count I, plaintiffs seek damages from defendant pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972. Recently, in Meghrig v. KFC Western, Inc., ___ U.S. ___, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), the Supreme Court considered the precise issue of whether RCRA "authorizes a private cause of action to recover the prior cost of cleaning up toxic waste that does not, at the time of suit, continue to pose an endangerment to health or the environment." Id. at ___, 116 S.Ct. at 1253. The Supreme Court "conclude[d] that it does not." Id. Because plaintiffs have not pled that the hydrocarbon contamination in issue presents an imminent and substantial endangerment to health or the environment, RCRA does not provide plaintiffs with a private cause of action to recover costs for their cleanup efforts. Thus, the Court will grant defendant's motion to dismiss as to Count I.
In Count II, plaintiffs seek a declaratory judgment under RCRA stating that defendant is strictly liable to plaintiffs for the environmental cleanup costs and losses that plaintiffs have incurred and will continue to incur. As discussed above, the Supreme Court has recently held that although RCRA does not prevent a private party from recovering its cleanup costs under other federal or state laws, the limited remedies described in the statute demonstrate that "Congress did not intend for private citizens to be able to undertake a cleanup and then proceed to recover costs under RCRA." Id. at ___, 116 S.Ct. at 1256. The Court will grant defendant's motion to dismiss as to Count II.

Count III
In Count III, plaintiffs seek recovery of costs under a common law theory of strict liability. Plaintiffs allege that defendant's "maintenance of underground storage tanks and the handling, use, storage, treatment and disposal of gasoline, oil, other petroleum products and hazardous waste" constituted "an abnormally dangerous or ultra hazardous activity." Amended Complaint, ¶ 35. Plaintiffs further allege that these activities resulted in damage to the Property and caused *790 plaintiffs to incur environmental cleanup costs. Amended Complaint, ¶¶ 35-38.
The issue before the Court is a narrow one  whether a party can be held strictly liable for damage inflicted upon its own property. Although Missouri courts have not addressed the question, this Court previously confronted the exact issue in Local No. 682 Health and Welfare Trust Fund v. Whiting, No. 91-1575-C-7 (E.D.Mo. May 19, 1992). In Whiting, the plaintiffs alleged that the defendants buried hazardous waste on property previously owned and operated by the defendants, later owned and operated by the plaintiffs. The plaintiffs alleged that the burial occurred during the time the defendants owned the property. In Whiting, the Court dismissed the plaintiffs' claim based upon strict liability. The Court adopts the following reasoning from Judge Hamilton's unpublished decision:
Section 519(1) of the Restatement (Second) of Torts provides that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(1) (1977). This rule of strict liability was originally set forth in Rylands v. Fletcher, L.R. 1 Ex. 265 (1866). Rylands held that if a person brings something on his land which, if it escapes, is likely to do harm, that person is prima facie liable for all the damage naturally occurring if there is an escape. Id. at 279.
Missouri courts have applied the rule of strict liability narrowly. See Bennett v. Mallinckrodt, Inc., 698 S.W.2d 854, 868 (Mo.App.1985), cert. denied, 476 U.S. 1176 [106 S.Ct. 2903, 90 L.Ed.2d 989] (1986). Further, Missouri courts have only applied the strict liability rule where the defendant's activity harms the person or property of another.
* * * * * *
In Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F.Supp. 93 (D.Mass.1990), a case very similar to the present one, the court refused to extend the abnormally dangerous activity doctrine to the placement of hazardous substances upon one's own land absent harm to the property of another.... This holding is in keeping with the rule set forth in Rylands. Further, the language of Section 519 of the Restatement, focusing on the harm to the person or property of another, also supports the Wellesley holding.
Id. at pp. 4-5.[2] The Court agrees that "[i]t would be nonsensical to even formulate a rule that an actor is strictly liable for harm inflicted on his or her own property or person." Wellesley, 747 F.Supp. at 102. Because plaintiffs cannot maintain an action for strict liability against defendant as the previous owner of the Property, the Court will grant defendant's motion to dismiss as to Count III.

Count IV
In Count IV, plaintiffs seek recovery of costs under what they label a negligence theory. Plaintiffs allege that (1) defendant owed a duty to plaintiffs to exercise ordinary care in the maintenance and use of the gasoline station and underground storage tanks on the Property; and (2) defendant had a duty "to disclose the presence of contamination and other hidden conditions on the Property which [defendant] knew or should have known would create an unreasonable risk of harm to the Property and the persons thereon." Amended Complaint, ¶ 40. The Court will address these two allegations of negligence separately.
The first issue before the Court is again a narrow one  whether a landowner has a duty to maintain his or her property in a certain condition or to refrain from an activity affecting the property which would extend to future owners of that land. Under Missouri law, "in any action for negligence, *791 the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." Martin v. City of Washington, 848 S.W.2d 487, 493 (Mo. banc 1993).
The Court, again following the logic set forth in Wellesley, finds that defendant owed no duty to plaintiffs to maintain its property in a certain condition which affected plaintiffs as future landowners. In Wellesley, the Court stated that
[t]he imposition of such a duty would be unreasonable because such future owners may not be known or even contemplated at the time the landowner creates or maintains a condition on his or her property. Moreover, such a duty would unreasonably interfere with a landowner's right of ownership; the right to do with his or her property as desired without liability so long as he or she does not interfere with the rights of others.
Id. at 100.[3]See also Dartron Corp. v. Uniroyal Chemical Co., 893 F.Supp. 730, 738 (N.D.Ohio 1995) (finding that under Ohio law a landowner owes no duty to a subsequent owner of the same land to properly dispose of hazardous wastes on that property and stating that "[t]he vast majority of courts that have examined this issue have concluded that such a duty does not exist under common law").
The Court has located and plaintiffs cite numerous cases which set forth duties that an occupier of land owes to an invitee, a licensee and occupants of neighboring land. The Court, however, has not located any Missouri law which extends those holdings in such a way that a landowner would have a duty to avoid harm to his or her own land that may cause injury of loss to a subsequent owner of the same land.
The second issue before the Court is whether plaintiffs' allegation that defendant had a duty "to disclose the presence of contamination and other hidden conditions on the Property which [defendant] knew or should have known would create an unreasonable risk of harm to the Property and persons thereon" states a claim for negligence. The Court's review of Missouri law leads it to conclude, as have other courts, that plaintiffs have failed to state a claim for negligence based on a theory of negligent nondisclosure.
In contrast to cases involving an affirmative misstatement or misrepresentation as to the condition of property, in which a seller's knowledge of the condition is generally irrelevant, when concealment of a latent condition is relied upon, "knowledge of the facts by the party who is claimed wrongfully to have withheld information is essential, in order the affect the validity of the sale." ... Thus, because the seller's knowledge of the condition is an essential element of a claim based on concealment, the case becomes one sounding in fraud, not negligence.
Haney v. Castle Meadows, Inc., 839 F.Supp. 753, 756-57 (D.Colo.1993). In Haney, the Court concluded that a claim for "negligent concealment is a legal impossibility in the vendor/purchaser context." Id. The Court finds no authority to support plaintiffs' claim for negligent nondisclosure.
Since defendant owes no duty to plaintiffs as the subsequent owners of the Property to properly dispose of hazardous wastes on the Property, and because under Missouri law there is no cause of action for negligent nondisclosure, the Court will grant defendant's motion to dismiss as to Count IV to the extent plaintiffs attempt to state a claim for negligence.
Defendant's motion to dismiss, however, does not specifically address plaintiffs' allegation of fraudulent nondisclosure.[4] Under Missouri law,

*792 [i]n some circumstances, silence or nondisclosure of a material fact can be an act of fraud. Andes v. Albano, 853 S.W.2d 936, 943 (Mo. banc 1993). However, before silence can amount to fraud, there must be a duty to speak. Id. This duty can arise where there is a relation of trust and confidence between the parties. It can also arise where one party has superior knowledge or information not within the fair and reasonable reach of the other party. Id.

Rose v. Summers, Compton, Wells & Hamburg, P.C., 887 S.W.2d 683, 687 (Mo.App. 1994). A party can state a claim for fraudulent nondisclosure in the real estate context. See Reeves v. Keesler, 921 S.W.2d 16, 19-20 (Mo.App.1996).
Although plaintiffs have pled fraudulent nondisclosure, the Court finds that their claim is barred by the applicable statute of limitations. Under R.S.Mo. § 516.120(5), a plaintiff who wishes to bring a fraud action has ten years from the commission of the fraudulent act to discover the fraud, and if the plaintiff fails to discover the fraud within this ten-year period, the five-year statute of limitations period begins to run at the expiration of the ten years. See Gilmore v. Chicago Title Ins. Co., 926 S.W.2d 695, 698 (Mo. App.1996). Here, plaintiffs acquired the Property from defendant in 1977. Plaintiffs had until 1987 to discover the fraud, and at that time the five year statute of limitations began to run. Thus, plaintiffs' claim for fraudulent nondisclosure, which was filed on August 3, 1995, is barred by the statute of limitations.[5]
Because plaintiffs' claim for fraudulent nondisclosure is barred by the statute of limitations, the Court will grant defendant's motion to dismiss as to the remainder of Count IV.

Count V
In Count V, plaintiffs seek recovery of costs under a private nuisance theory. Plaintiffs allege that defendant's operation, ownership and maintenance of the Property constitutes a private nuisance because it substantially interferes with plaintiffs' use and enjoyment of the Property. Amended Complaint, ¶ 47. The law of nuisance evolved as a means of resolving conflicts between neighboring contemporaneous land users. Defendant argues with the support of ample case authority that the law of nuisance cannot be expanded to permit recovery in the circumstances alleged here  namely where current owners of property seek recovery against a prior landowner for a condition created on the property by the prior owner. See Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 313 (3d Cir.1985), cert. denied, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (the Court observed that it found no case from Pennsylvania or any other jurisdiction "that permits a purchaser of real property to recover from the seller on a private nuisance theory for conditions existing on the very land transferred, and thereby to circumvent limitations on vendor liability inherent in the rule of caveat emptor"); see also 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp., 885 F.Supp. 410, 421 (E.D.N.Y.1994) (finding that courts "have consistently rejected the efforts of property owners who discover contamination on their properties to maintain private nuisance claims against the former owners or lessees"); Rosenblatt v. Exxon, 335 Md. 58, 642 A.2d 180, 189 (1994) ("Courts which have considered such claims have rejected them on the basis that a cause of action for private nuisance requires an interference with a neighbor's use and enjoyment of the land.")
Although plaintiffs cite numerous Missouri cases, none addresses the precise issue before the Court and none supports plaintiffs' claim that a current property owner may recover against a prior owner for a condition created on the property by the prior owner. The Court finds that plaintiffs have failed to state a claim for a private *793 nuisance under Missouri law, thus the Court will grant defendant's motion to dismiss as to Count V.

Count VI
In Count VI, plaintiffs allege that defendant's use of the Property constitutes a continuing trespass. Amended Complaint, ¶ 50. Under Missouri law, a trespass is a "direct physical interference with the person or property of another." Hansen v. Gary Naugle Construction Co., 801 S.W.2d 71, 74 (Mo. banc 1990) quoting Mawson v. Vess Beverage Co., 173 S.W.2d 606, 613 (Mo.App. 1943). The Court will adopt the analysis set forth in Whiting. In Whiting, the Court, following Wellesley, granted defendants' motion to dismiss based upon a theory of continuing trespass and stated:
In Wellesley, the court dismissed the plaintiff's claim for trespass, finding that the plaintiff had failed to show that the release of hazardous materials on one's own property was tortious. Wellesley, 747 F.Supp. at 99. To state a claim for continuing trespass, Plaintiffs must show that Defendants tortiously placed the hazardous materials on the property. Since Defendants owned the property at the time the hazardous materials were buried there, Plaintiffs can prove no set of facts which would entitle them to relief. The hazardous substances were not tortiously placed on Plaintiffs' property since the property belonged to Defendants at the time of the burial.
Id. at 6-7. See also Dartron Corp. v. Uniroyal Chemical Co. Inc., 893 F.Supp. 730, 740-41 (N.D.Ohio 1995).[6] The Court finds that defendant did not tortiously interfere with plaintiffs' property when defendant buried materials on land then owned by defendant. The Court will grant defendant's motion to dismiss as to Count VI.

Count VII
In Count VII plaintiffs seek contribution and/or indemnity from defendant. Where there is no liability on the principal claims, a claim for contribution or indemnity cannot stand. State ex rel. Manchester Ins. & Indem. Co. v. Moss, 522 S.W.2d 772, 774 (Mo. banc 1975) (indemnity applies only when a duty owed by one is discharged by another); Stephenson v. McClure, 606 S.W.2d 208, 212 (Mo.App.1980) (to state a claim for contribution, both parties must be under a common liability). Since the Court has dismissed each of plaintiffs' claims, the Court will grant defendant's motion to dismiss as to Count VII.

D. Conclusion
Based upon the foregoing, the Court will dismiss each count of plaintiffs' amended complaint.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion to dismiss [Doc. # 9-1] is granted.
IT IS FURTHER ORDERED that defendant's motion to strike [Doc. # 9-2] is denied as moot.
NOTES
[1] Defendant asserts that plaintiffs or their lessees also used the Property as a gasoline station after they acquired the Property from defendant.
[2] Plaintiffs argue, as did the plaintiffs in Whiting, that the Court should follow T & E Industries Inc. v. Safety Light Corp., 123 N.J. 371, 587 A.2d 1249 (1991). In T & E Industries, the court held that a remote vendee has a cause of action for strict liability against a previous owner of land who, during his ownership, released hazardous materials onto that land. As previously stated in Whiting, the Court declines to adopt the reasoning applied in T & E Industries.
[3] Plaintiffs' reliance on Soo Line RR v. B.J. Carney & Co., 797 F.Supp. 1472, 1488 (D.Minn. 1992) is misplaced. In Soo Line, the Court allowed plaintiff's claim for negligence to stand because plaintiff was a lessor and the defendant, as the lessee and possessor of the land, had a common law duty to exercise reasonable care and maintain the premises so as to protect visitors from an unreasonable risk of harm.
[4] Although under the heading of "negligence", plaintiffs have alleged that defendant knew or should have known of the contamination, defendant had a duty to disclose the fact of the contamination, defendant breached that duty and plaintiffs were thereby damaged. Amended Complaint, ¶¶ 40-43.
[5] A plaintiff can avoid the running of the statute of limitations by showing that some "trick or artifice was used to prohibit [plaintiff] from inquiring or making investigation regarding the fraud," or that plaintiff was "prevented from inquiring about the particular acts of concealment." However, a plaintiff must plead this exception for it to apply. Batek v. Curators of U. of Missouri, 920 S.W.2d 895, 900 (Mo. banc. 1996). Plaintiffs have not done so.
[6] Plaintiff's citation to Bell v. Amoco Oil Co., 91cv2363-SNL is inapposite. In Bell, the defendant was a lessee of the property in question and the Court found that a genuine issue of fact existed as to whether its activities of contamination constituted a trespass by exceeding the terms of the lease. In Bell, the Court distinguished Wellesley because in Wellesley the defendant was fee simple owner of the property at the time it had contaminated the property. Here, like Wellesley and unlike Bell, defendant was the fee simple owner of the property at the time of the alleged contamination.