OPINION AND ORDER
 

 ROBERT E. JONES, District Judge:
 

 This action arises under the Resource Conservation and Recovery Act’s (RCRA’s) citizen suit provision, 42 U.S.C. § 6972, and the Oregon Superfund statutes. Plaintiff Express Car Wash filed a citizen suit against defendants Chevron U.S.A. and Irinaga Brothers, alleging that hazardous waste in the form of petroleum products is contaminating its real property. Irinaga Brothers then filed a third-party action against John Mitchell, Inc.
 

 This case is now before me on defendant Chevron U.S.A.’s and defendant Irinaga Brothers’ motions (# 41, # 46) for summary judgment. For the reasons discussed below, I GRANT these motions as to plaintiffs RCRA claims and DISMISS plaintiffs state-law claims pursuant to 28 U.S.C. § 1367(c)(3).
 

 FACTS
 

 Plaintiff Express Car Wash is an Oregon corporation that owns real property at 10270 S.W. Canyon Road, in Beaverton, Oregon. Defendant Chevron U.S.A. is a Pennsylvania corporation authorized to do business in Oregon. Defendant Irinaga Brothers is an Oregon corporation.
 

 On July 14, 1971, Irinaga Brothers purchased the subject property from the Western Oregon Conference Association of Seventh-Day Adventists, which had used the property as a church. Irinaga Brothers operated the property as a service station and car wash from 1971 until 1979.
 

 Chevron U.S.A. held title to equipment on the property from 1971 until 1979 and supplied fuels to the property from 1971 until March 1992. Chevron-branded dealers occupied the property continuously from 1971 until March 1992, but Chevron asserts that these dealers are independent businesses. Moreover, Chevron asserts that it held title to underground storage tanks (USTs) and other improvements on the property subject to a contract of sale with Irinaga Brothers, which was a security arrangement set up in a July 21, 1971 Facilities Lease. Plaintiff disputes Chevron’s assertions that it held title to the USTs and other improvements only as a security arrangement. In any case, according to Chevron’s exhibits, on March 24, 1980, Chevron U.S.A. did “hereby grant, sell and transfer” to Irinaga Brothers the personal property described in the 1971 Facilities Lease.
 

 In 1979, Irinaga Brothers leased the facilities to Hanna Industries, Inc., which did business as Rub-A-Dub Car Wash, Inc. Irinaga Brothers then sold the property to Daniel C. Hanna and Hanna Industries in December 1986. Hanna Industries subsequently went bankrupt.
 

 In 1995, plaintiff Express Car Wash purchased the property from the Hanna Indus
 
 *1190
 
 tries bankruptcy trustee, John Mitchell. Charles Kaady, Express Car Wash corporation’s principal, is Daniel Hanna’s nephew and worked at Mr. Hanna’s car washes from 1973 through 1978. He retained Roger Smith, a geological engineer, to investigate the property. Mr. Smith concluded that there was contaminated soil and groundwater in and around the site.
 

 In addition, prior to the sale of the property to Express Car Wash, John Mitchell retained Martin Burck, an environmental geologist, to investigate the site. Mr. Burck installed three groundwater monitoring wells at the site and, with the trustee’s permission, later began working for Express Car Wash. Prior to Express Car Wash’s purchase, Mr. Burck gave Mr. Kaady an estimate of $48,-250.00 to clean up the property’s contamination. Mr. Kaady understood that this was the estimate for remediating the property.
 

 On March 29, 1995 — prior to closing the sale on April 6,1995 — Mr. Kaady’s attorney, Raymond Rask, sent a demand letter to Irinaga Brothers asking for contribution for the cleanup costs. Mr. Kaady received a $25,-000.00 offset in the property’s purchase price in recognition of the anticipated cost of cleanup. In addition, in order to obtain financing to purchase the property, Mr. Kaady signed a contract with his lending institution promising that he would complete remediation of the contamination no later than April 1,1997.
 

 On May 22, 1995, Mr. Kaady entered a “Cost Recovery Agreement” with DEQ pursuant to DEQ’s Voluntary Cleanup program, which recognizes DEQ’s oversight responsibilities for the site and provides that plaintiff will reimburse DEQ for its expenses. Plaintiff is currently remediating this site in accordance with the program. Plaintiffs agreement with DEQ provides that either side can terminate it with 15 days notice.
 

 In July 1995, DEQ issued a Notice of Noncompliance to Charles Kaady for the Hanna Station # 916 at 10270 SW Canyon Road in Beaverton, Oregon. DEQ noted that “Contaminated soil from recent cleanup activities is being aerated on site” without DEQ authorization and that the contaminated soil was not being managed responsibly.
 

 In response to Chevron’s requests for admissions, plaintiff has stated that it is voluntarily remediating the property, that DEQ has agreed to oversee the work, and that it has complied with all release detection requirements applicable to the property. Moreover, plaintiff has admitted that it knew that the property was contaminated with petroleum products prior to purchasing the property — in fact, that it knew or had reason to know of the contamination as of May 28, 1994 — and that, prior to its purchase of the property, its consultant estimated that the future remediation costs associated with the property would be at least $50,000.
 

 At oral argument, the parties disagreed as to how close to being completely cleaned up the subject property is. Defendants asserted that remediation continues only for the purposes of maintaining this lawsuit. Plaintiff asserted, for the first time, that the contamination has migrated through groundwater to an adjacent property and that the scope of the off-site contamination remains to be determined. The parties presented no evidence to support either assertion, other than Mr. Kaady’s agreement with his lender to have the site cleaned up by April 1997.
 

 DISCUSSION
 

 Defendants Chevron U.S.A. and Irinaga Brothers raise overlapping but not identical arguments as to why summary judgment should be granted in their favor. Chevron argues that: (1) plaintiff is not an “innocent party” and has already begun remediation and hence cannot seek an injunction under RCRA or relief under Oregon law; (2) Chevron cannot be liable under RCRA because it only held a security interest in personal property on the site at issue; (3) this court should abstain from exercising jurisdiction under the
 
 Burford,
 
 abstention doctrine; and (4) Chevron cannot be hable as an “owner or operator” under Oregon law. Irinaga Brothers argues that it is entitled to summary judgment because: (1) there is no evidence that it caused a “release” of petroleum into the environment; and (2) this court should abstain from hearing plaintiff’s RCRA claims and should then dismiss its state-law claims pursuant to 28 U.S.C. § 1367(c)(3).
 

 
 *1191
 
 A. Summary Judgment Standard
 

 Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.
 
 United Steelworkers of Amer. v. Phelps Dodge Corp.,
 
 865 F.2d 1539, 1542 (9th Cir.),
 
 cert. denied,
 
 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).
 

 The substantive law governing a claim determines whether a fact is material.
 
 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.,
 
 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party.
 
 Id.
 
 at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party.
 
 Id.
 
 at 630-31.
 

 B. RCRA Claims
 

 1. RCRA Citizen Suit Requirements
 

 The Resource Conservation and Recovery Act (RCRA), which amends the Solid Waste Disposal Act, provides that “any person may commence a civil action on his own behalf — ”
 

 Against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment * *
 
 *.
 

 42 U.S.C. § 6972(a)(1)(B). In ordering relief for such citizen suits, district court judges may:
 

 restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, * * * and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.
 

 Id.
 
 § 6972(a).
 
 [1]
 

 Gasoline and other petroleum products are hazardous wastes under RCRA. 42 U.S.C. § 6903(5), (27). The issue in this case is whether plaintiff has a viable claim under RCRA
 
 [2]
 
 for its future clean-up costs
 
 [3]
 
 for the remediation currently undertaken.
 
 [4]
 

 In a very recent case involving recovery of cleanup costs pursuant to RCRA, the U.S. Supreme Court held that RCRA does not authorize “a private cause of action to recover the prior cost of cleaning up toxic waste that does not, at the time of suit, continue to pose an endangerment to health or the environment.”
 
 Meghrig v. KFC Western, Inc.,
 
 — U.S. -, -, 116 S.Ct. 1251, 1253, 134 L.Ed.2d 121 (1996). In that suit, KFC Western brought a RCRA citizen suit three years
 
 *1192
 
 after it had finished removing and disposing of oil-tainted soil from the subject' property, seeking to recover its cleanup costs from the Meghrigs.
 

 The Court looked first at RCRA’s purposes, noting that, unlike CERCLA, “RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards.”
 
 Id.
 
 at-, 116 S.Ct. at 1254. Instead, “RCRA’s primary purpose * * * is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, ‘so as to minimize the present and future threat to human health and the environment.’ ”
 
 Id.
 
 (quoting 42 U.S.C. § 6902(b)).
 

 The court concluded that “RCRA’s citizen suit provision is not directed at providing compensation for past cleanup efforts.”
 
 Id.
 
 First, it noted, plaintiffs can seek either a mandatory injunction or a prohibitory injunction through a RCRA citizen suit, but neither of these “contemplates the award of past cleanup costs.”
 
 Id.
 
 This point is especially obvious, the Court continued, when one compares RCRA’s remedies to CERCLA’s: Congress “demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and
 
 *
 
 * * the language used to define the remedies under RCRA does not provide that remedy.”
 
 Id.
 
 at-, 116 S.Ct. at 1255.
 

 Second, the Court noted that a person can bring a RCRA citizen suit “only upon a showing that the solid or hazardous waste at issue ‘may present an imminent and substantial endangerment to health or the environment.’ ”
 
 Id.
 
 (quoting 42 U.S.C. § 6972(a)(1)(B)). The Court viewed this provision as a timing requirement: “An endangerment can only be ‘imminent’ if it ‘threaten[s] to occur immediately,’ Webster’s New International Dictionary of English Language 1245 (2d ed. 1934), and the reference to waste which ‘may present’ imminent harm quite clearly excludes waste that no longer presents such a danger.”
 
 Id.
 
 It then quoted the Ninth Circuit with approval that “this language ‘implies that there must be a threat which is present now, although the impact of the threat may not be felt until later.’ ”
 
 Id.
 
 (quoting
 
 Price v. United States Navy,
 
 39 F.3d 1011, 1019 (9th Cir.1994)). As a result, the Court concluded, RCRA’s citizen suit provision “was designed to provide a remedy that ameliorates present or obviates the risk of future ‘imminent’ harms, not a remedy that compensates for past cleanup efforts.”
 
 Id.
 

 The Court noted, however, that “RCRA does not prevent a private party from recovering its cleanup costs under other federal or state laws * * * .” Id. at -, 116 S.Ct. at 1256 (citing 42 U.S.C. § 6972(f)). Moreover, the Court did not consider “whether a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced * * * or otherwise recover cleanup costs paid out after the invocation of RCRA’s statutory process * * Id.
 

 The Supreme Court’s decision in
 
 Meghrig
 
 thus defines the two endpoints of the RCRA citizen suit continuum: a plaintiff facing an imminent threat from hazardous waste, when no remediation has yet taken place, clearly can sue under RCRA for an injunction to force appropriate parties to clean up the contamination. That same plaintiff absolutely
 
 cannot
 
 sue under RCRA if he or she has already cleaned up the waste and only seeks reimbursement.
 
 Meghrig
 
 leaves for lower courts issues of line drawing regarding how far a plaintiff may proceed with a cleanup and still be able to bring suit and whether a plaintiff can ever use RCRA to force another party to participate in an ongoing cleanup strictly through monetary payments.
 

 Only one federal court since the Supreme Court’s decision has confronted the issue of whether a RCRA plaintiff can receive an injunction related to cleanup costs for a cleanup that is not yet completed. The Eastern District of Missouri faced a motion to dismiss in a RCRA case where cleanup at the site was ongoing and plaintiffs sought damages and a declaratory judgment that defendant was liable to them for the environmental cleanup costs.
 
 Cross Oil Co. v. Phillips
 
 
 *1193
 

 Petroleum Co.,
 
 944 F.Supp. 787, 789 (E.D.Mo.1996).
 

 Citing
 
 Meghrig’s
 
 requirement that the contamination must, at the time of suit, continue to pose a threat, the district court dismissed plaintiffs’ damages claim because “plaintiffs have not pled that the hydrocarbon contamination in issue presents an imminent and substantial endangerment to health or the environment * * * .”
 
 Id.
 
 In addition, even though the court acknowledged that plaintiffs “will continue to incur” environmental cleanup costs after they had filed suit, it nevertheless dismissed their claim for a declaratory judgment because “Congress did not intend for private citizens to be able to undertake a cleanup and then proceed to recover costs under RCRA.’”
 
 Id.
 
 (quoting
 
 Meghrig,
 
 - U.S. at-, 116 S.Ct. at 1256).
 

 2. Plaintiffs Prima Facie Case
 

 In its Complaint, plaintiff clearly alleges that the contamination of its property presents “an imminent and substantial endangerment to the health or the environment.” Complaint 5 14. Plaintiff admits that remediation is ongoing on the site, and defendants have not provided evidence that the contamination had been completely removed or the threat’s imminence otherwise eliminated by the time plaintiff brought this action. Because this court must view inferences in the light most favorable to the non-moving party and because reasonable doubts about the existence of a factual issue should be resolved against the moving party,
 
 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass’n,
 
 809 F.2d 626, 630-31 (9th Cir.1987), I must conclude that, for purposes of defendants’ motions for summary judgment, a factual issue remains regarding the
 
 Meghrig
 
 requirement that the contamination pose an imminent threat at the time a RCRA citizen suit is filed.
 

 Nevertheless, plaintiffs current RCRA claim fails under the principles of
 
 Meghrig
 
 because plaintiff seeks recovery of its cleanup costs for remediation that was well under way by the time it filed its RCRA citizen suit. Plaintiff entered its agreement with DEQ to begin cleanup in May 1995. DEQ’s Notice of Noncompliance in July 1995 indicates that plaintiff was engaged in active remediation of the site by at least that date. Nevertheless, plaintiff did not file this suit until a year after it entered its agreement with DEQ, in May 1996.
 

 The Supreme Court in
 
 Meghrig
 
 clearly indicated that a RCRA plaintiff has no claim to an injunction requiring another party to pay cleanup costs incurred before the plaintiff commenced its RCRA citizen suit.
 
 See Meghrig,
 
 — U.S. at -, 116 S.Ct. at 1256 (noting that the Court did not consider “whether a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced” and thus implying that costs incurred before the suit are included in its main decision’s prohibition on recovery). As plaintiff has admitted, therefore, it has no RCRA claim for the remediation costs it incurred prior to filing suit in May 1996.
 

 Nor does the only relief plaintiff has articulated — payment of remediation costs since it filed suit — fit RCRA’s citizen suit provisions. Those provisions allow federal courts “to restrain any person” or “to order such person to take such other action as may be necessary * * 42 U.S.C. § 6972(a). Federal courts addressing the issue have universally held that RCRA citizen suits provide no damages remedy.
 
 Furrer v. Brown,
 
 62 F.3d 1092 (8th Cir.1995);
 
 Walls v. Waste Resource Corp.,
 
 761 F.2d 311 (6th Cir.1985);
 
 Portsmouth Redevelopment & Housing Auth. v. BMI Apartments Assocs.,
 
 847 F.Supp. 380 (E.D.Va.1994);
 
 Polcha v. AT & T Nassau Metals Corp.,
 
 837 F.Supp. 94 (M.D.Pa.1993);
 
 Kaufman & Broad-South Bay v. Unisys Corp.,
 
 822 F.Supp. 1468 (N.D.Cal.1993);
 
 Commerce Holding Co. v. Buckstone,
 
 749 F.Supp. 441 (E.D.N.Y.1990).
 

 At oral argument, the parties addressed the possibility that response costs at this site will continue. In response to assertions by defendants that the remediation system is in place and that there is nothing left for anyone to do but pay money, plaintiff merely asserted that there is lots of money left to spend in cleaning up the site. Plaintiff has not identified anything else defendants could
 
 *1194
 
 do for the documented contamination (gasoline spillage onto soil and into groundwater below the subject property), nor has it done anything more than assert, without supporting evidence, that additional off-site groundwater contamination exists, for which injunctive relief might be appropriate under RCRA. In short, plaintiff at this juncture seeks only to recover its present and future costs for an established remediation.
 

 Such relief cannot only be classified as damages, and RCRA, as discussed above, does not provide a damages remedy. Moreover, as plaintiffs complaint attests, plaintiff can seek such damages under state law. Therefore, even under a more traditional view of equitable relief, plaintiff has an adequate remedy at law that renders equitable relief inappropriate.
 

 In addition, the Supreme Court’s logic in
 
 Meghrig
 
 indicates that, if squarely faced with the question at issue here, it would hold that RCRA does not allow a plaintiff to recover any costs for remediation substantially in place at the time of suit. As the Court noted, the limited remedies in RCRA’s citizen suit provision and the difference in language between RCRA and CERCLA’s cost recovery provisions “amply demonstrate that Congress did not intend for a private citizen to be able to undertake a cleanup and then proceed to recover its costs under RCRA.”
 
 Meghrig,
 
 — U.S. at -, 116 S.Ct. at 1256.
 

 In addition, this court has previously noted for RCRA citizen suits that “[i]f this Court were writing from a clean slate, I would conclude that response costs under RCRA are not available based upon (1) the plain language of the statute, (2) what I interpret to be the congressional intent, and (3) what I am convinced represents the proper judicial interpretation from other circuits.”
 
 Catellus Development Corp. v. L.D. McFarland Co.,
 
 910 F.Supp. 1509, 1517 (D.Or.1995). In that case, I was constrained by the Ninth Circuit’s opinion in
 
 RFC Western Inc. v. Meghrig,
 
 49 F.3d 518, 523-24 (9th Cir.1995). The U.S. Supreme Court, as discussed above, has since overturned the Ninth Circuit’s decision.
 

 As the Supreme Court noted in
 
 Meghrig,
 
 CERCLA, not RCRA, is the statute Congress intended to govern cleanup of hazardous materials and cost recovery and contribution for those cleanups. — U.S. at -, 116 S.Ct. at 1253. While Congress’s exclusion of petroleum products from CERCLA’s coverage is perhaps unfortunate for plaintiffs such as Express Car Wash, Congress has the power to make such legislative decisions and the Supreme Court has subsequently emphasized the differences between the two statutes in this cost recovery context. In light of my prior interpretation of RCRA and the Eastern District of Missouri’s recent holding, I now hold that plaintiff cannot use RCRA to recover even those response costs that it “will continue to incur” when remediation systems or activities are in place or substantially in place at the time of suit.
 
 [5]
 
 I therefore GRANT summary judgment to defendants Chevron and Irinaga Brothers regarding plaintiffs current RCRA claim.
 

 C. Plaintiffs State-Law Claims
 

 With the elimination of plaintiffs RCRA claims, no basis for federal jurisdiction remains in this case: plaintiff has no other federal law claims, and there is not complete diversity because both plaintiff and defendant Irinaga Brothers are Oregon corporations.
 

 Under federal statute, this court may decline to hear supplemental state-law claims if it “has dismissed all claims over which it has original jurisdiction.” 28 U.S.C. § 1367(c)(3). The U.S. Supreme Court has indicated that “if the federal claims are dismissed before trial * * * the state claims should be dismissed as well.”
 
 United Mine Workers of America v. Gibbs,
 
 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). It has also recognized that “in the usual case in which federal-law claims are
 
 *1195
 
 eliminated before trial, the balance of factors * * * will point toward declining to exercise jurisdiction over the remaining state-law claims.”
 
 Carnegie-Mellon Univ. v. Cohill,
 
 484 U.S. 343, 350 n. 7,108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1980). The factors for courts to consider are “economy, convenience, fairness, and comity in deciding to retain jurisdiction over pendent state claims.”
 
 Imagineering, Inc. v. Kiewit Pacific Co.,
 
 976 F.2d 1303, 1309 (9th Cir.1992),
 
 cert. denied
 
 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993) (citing
 
 Carnegie-Mellon Univ.,
 
 484 U.S. at 353, 108 S.Ct. at 620).
 

 In this case, plaintiffs remaining claims are based strictly in Oregon law, both the Oregon statutes governing removal or remedial actions, ORS 465.200 to 465.545, and, as the parties’ statements of fact indicate with respect to Chevron, Oregon contract and mortgage law. The basis for my granting of summary judgment regarding plaintiffs RCRA claim has not required me to make findings of fact or reach conclusions of law that are in any way determinative of these state-law claims.
 

 In addition, the Oregon statutes governing removal or remedial actions are similar, but not identical, to the federal CERCLA and RCRA, and the Oregon courts have not yet addressed the
 
 Meghrig
 
 decision in the context of Oregon’s statutes. Therefore, under principles of comity, fairness, and economy, it would be more appropriate for the Oregon courts to determine how — if at
 
 all
 
 — Meghrig will influence their interpretation of these defendants’ liability under Oregon statutes. Moreover, if it becomes necessary under Oregon law, as I believe it may, to establish what interest, exactly, Chevron had in the property it leased to Irinaga Brothers, principles of comity and fairness again indicate that Oregon courts are the more appropriate courts both to make that decision and to determine how Chevron’s interest affects its liability under state law.
 

 Therefore, I DISMISS plaintiffs remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).
 

 CONCLUSION
 

 Defendants Chevron U.S.A.’s and Irinaga Brothers’ motions (#41, # 46) for summary judgment are GRANTED as to plaintiff’s RCRA claim. Plaintiff’s state law claims are DISMISSED pursuant to 28 U.S.C. § 1367(c)(3).
 

 [1]
 

 . The referenced civil penalty sections allow the court to issue compliance orders, 42 U.S.C. § 6928(a), and to order the violator to pay the U.S. government up to $25,000 per violation in civil penalties.
 
 Id.
 
 § 6928(g). There are thus no provisions by reference for contribution.
 

 [2]
 

 . CERCLA — which has a clear contribution provision, 42 U.S.C. § 9613(0 — does not apply to petroleum products. 42 U.S.C. § 9601(14).
 

 [3]
 

 . At oral argument, plaintiff conceded that it had no claim under RCRA for its past remediation costs.
 

 [4]
 

 .As noted above, plaintiff has asserted that additional remediation may become necessary after the groundwater contamination is fully characterized. If so, plaintiff may have a new RCRA claim to bring in this court. However, without evidence of that asserted contamination or the need for additional remediation, this court cannot consider the asserted groundwater contamination to be part of the present action.
 

 [5]
 

 . I emphasize, however, that this holding goes no further. In particular, I would expect that many RCRA citizen suits would continue to be viable if a plaintiff who had begun remediation at a site sued to have defendants install additional remediation systems or perform different required activities than plaintiff had already undertaken, or if a plaintiff sought to have defendants completely take over responsibility for completing a remediation that plaintiff had begun.