**ABB INDUSTRIAL SYSTEMS, INC., Plaintiff,**

v.

**PRIME TECHNOLOGY, INC., et al., Defendants.**

**No. CIV. 3:91CV553(PCD).**

United States District Court, D. Connecticut.

Aug. 19, 1998.

Taggart D. Adams, Joseph M. Pastore, III, Kelley, Drye & Warren, Stamford, CT, Pamela Schaefer, Kevin J. Lyons, Christopher J. Jaekels, Cook & Franke, Milwaukee, WI, for Plaintiff.

Charles T. Lee, Patrick W. Shea, Harold Nelson Eddy, Jr., Paul, Hastings, Janofsky & Walker, Stamford, CT, Norman A. Dupont, Shapiro, Mitchell & Dupont, Santa Monica, CA, for Defendant, Pacific Scientific Co.

### RULING ON DEFENDANT'S MOTION TO BIFURCATE TRIAL

DORSEY, District Judge.

Defendant moves to bifurcate the trial of plaintiff's claims seeking contribution for cleanup costs at plaintiff's property in Orange, Connecticut under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Resource Conservation and Recovery Act (RCRA). Defendant seeks to bifurcate the trial into two phases, with the first phase focusing solely on the issue of plaintiff's compliance with the National Contingency Plan (NCP) and the second phase allotted to expert hydrology and damages issues.

## I. BACKGROUND

Plaintiff originally brought this action in 1991 against defendant and four other companies seeking contribution for clean up costs of hazardous wastes at plaintiff's property on 88 Marsh Hill Road in Orange, Connecticut. After six years of litigation, various summary judgment motions and an appeal to the Second Circuit, only Defendant Pacific Scientific Company (defendant) remains in the suit.

## II. ANALYSIS

Defendant seeks to bifurcate the trial into an initial phase focusing on whether plaintiff has complied with the NCP in its clean up efforts for which it seeks contribution, which is an element of plaintiff's *prima facie* case establishing CERCLA liability. Then in a second phase defendant would like to litigate the issues of whether defendant is a responsible party under CERCLA § 107(a) due to a spill occurring during its predecessor's pres-

ence on the property, the proper allocation of costs under CERCLA, and attorneys' fees. Defendant argues that resolving the NCP compliance issue first serves judicial economy because the remaining, more complicated issues reserved for the second phase may never need be tried if plaintiff fails to prove its compliance in the first.

## A. RCRA Claim

As an initial matter in its objection to bifurcation, plaintiff states that it has a remaining claim under RCRA to be tried. Plaintiff seeks an injunction under RCRA requiring defendant to take over the remedy which plaintiff has initiated, and to conduct any additional, necessary remediation. Defendant argues that plaintiff has waived its RCRA claim.

RCRA provides that "any person may commence a civil action . . . against any person . . . who has contributed or is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . ." 42 U.S.C. § 6972(a)(1)(B).

Defendant argues that although the state Department of Environmental Protection (DEP) listed the site as a hazardous waste disposal site in 1991 [1], six years have elapsed and plaintiff cannot maintain that the site still poses an "imminent and substantial endangerment to health" as required by RCRA, especially in light of plaintiff's clean up actions. Secondly, defendant asserts that the RCRA claims is legally barred by laches, since plaintiff "chose to do nothing from November 1991 through November 1997. It sought no injunctive relief in any form." Defendant's Reply Memorandum In Support of Motion to Bifurcate Trial at 11.

■ In *Meghrig v. KFC Western, Inc.,* the Supreme Court held that § 6972(a)(1)(B) does not encompass past harms that no long-

er pose an "imminent and substantial endangerment to health". The pollutant risk must fulfill this criteria at the time the suit is filed. 516 U.S. 479, 484–488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). The inclusion of plaintiff's site on the DEP's hazardous waste disposal site list in 1991, when this suit was filed, arguably supports a conclusion that the pollutant risk met the imminent and substantial requirement at that time. This is a factual issue that must be resolved at trial.

■ Defendant's argument that since plaintiff did not seek injunctive relief during the interim period between the filing of its RCRA claim and trial, it has either waived its claim, or is barred through laches from bringing it, is contradicted by the holding in *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568 (5th Cir.1988). There, the court held that the RCRA claim for injunctive relief would not be dismissed based on complainant's failure to meet the standard for preliminary injunction. "These requirements appertain to preliminary injunctions. Complainants seek no interim relief but ask for a permanent injunction after trial on the merits. Whether the trial court will reach and grant that relief on the merits can now only be a matter for speculation." *Id.* at 1576. Similarly, plaintiff here seeks a permanent injunction [2] after trial rather than preliminary or interim injunctive relief, and should be allowed to proceed with its RCRA claim and the relief sought thereunder.

Defendant cites *Express Car Wash Corp. v. Irinaga Bros., Inc.,* 967 F.Supp. 1188 (D.Or.1997) in support of its argument that plaintiff has lost its RCRA claim. Applying *Meghrig,* the court held that a plaintiff cannot file a claim for injunctive relief under RCRA if she has already cleaned up the waste and, in effect, only seeks reimbursement. 967 F.Supp. at 1192. However, the decision emphasized that "this holding goes no further. In particular, I would expect

1. Schaefer Decl. Ex. B.

2. Plaintiff's Second Amended Complaint asks for an "order enjoining each of the defendants pursuant to 42 U.S.C. §§ 9659(c) and 6972(a) to respond to the release of hazardous substances at the 88 Marsh Hill Road facility in a manner

consistent with the National Contingency Plan and to correct and rectify their past mishandling of hazardous waste at the facility in violation of RCRA." Plaintiff's Second Amended Complaint at 14–15.

that many RCRA citizen suits would continue to be viable if a plaintiff who had begun remediation at a site sued to have defendants install additional remediation systems or perform different required activities than plaintiff had already undertaken, *or if a plaintiff sought to have defendants completely take over responsibility for completing a remediation that plaintiff had already begun."* Id. at 1194 n. 5. (emphasis added.)

In 1989 plaintiff began receiving test results indicating that the property was contaminated by hazardous chemicals. *ABB Industrial Systems, Inc. v. Prime Technology, et al.,* 120 F.3d 351, 354 (2d Cir.1997). Plaintiff filed this suit and its RCRA claim in 1991. Plaintiff began clean up in 1992. At the time this claim was filed, no clean up of the site had occurred. Thus the situation here fits squarely under one of the exceptions to the holding discussed in *Express Car Wash,* and this citation actually supports the vitality of plaintiff's RCRA claim, rather than defendant's opposite contention.

### B. *Compliance with the NCP*

■ Defendant wishes to first address the issue of plaintiff's compliance with the NCP in its clean up of the site before litigating the remaining issues. To establish *prima facie* liability under CERCLA, plaintiff must demonstrate each of the following: (1) the defendant is a responsible party under § 9607(a); (2) the site is a facility as defined in § 9601(9); (3) there has been a release or there is a threatened release of hazardous substances; (4) the plaintiff has incurred costs in response to the release or threatened release; and (5) the response costs conform to the national contingency plan. *ABB Industrial Systems, Inc.,* 120 F.3d at 356. Defendant concedes that the site is a facility under the definition of CERCLA, that there has been a release of hazardous substances, and that plaintiff has incurred costs in response to the release. Defendant's Memorandum In Support of Motion to Bifurcate

Trial at 3. Thus, the first and fifth elements remain to be proved.

■■ In determining compliance with the NCP, four issues are examined: (1) appropriate site investigation and analysis of remedial alternatives; (2) compliance with the scoring, development and selection criteria for removal and remedial actions; (3) selection of a cost-effective remedy; and (4) opportunity for public comment. *Sherwin–Williams Co. v. Hamtramck,* 840 F.Supp. 470, 476 (E.D.Mich.1993). A response action must be in substantial compliance with the pertinent provisions of the law to be consistent with the NCP. 40 C.F.R. § 300.1 et seq.

■ "Whether Plaintiff's costs can be characterized as necessary depends upon whether Plaintiff's actions are characterized as a removal action or a remedial action under CERCLA and the NCP." *U.S. Steel Supply Inc., v. Alco Standard Corp.,* 1992 WL 229252, *8 (N.D.Ill.1992). Removal actions are typically characterized as the removal of hazardous wastes in immediate response to an emergency situation, while remedial actions focus on the permanent remedy taken instead of or in addition to removal actions in order to prevent future releases. *See id.* at *9. Different standards govern compliance with the NCP for each. *Id.;* Ruling on Pending Motions, dated Oct. 29, 1994, at 10 [hereinafter Ruling]. Whether actions constitute removal or remedial activities is a fact intensive question. Id. at 11 (citing *Carlyle Piermont Corp. v. Federal Paper Bd. Co.,* 742 F.Supp. 814, 819 (S.D.N.Y.1990)).

■ Defendant previously sought summary judgment on the issue of whether plaintiff's clean up costs complied with the NCP, and summary judgment was denied based on material facts being in dispute regarding whether plaintiff's actions were remedial or removal. Ruling at 12. Defendant claims that plaintiff has now conceded, based on the deposition of plaintiff's project manager at the site [3], that its clean up actions are

---

**3.** Q: Are you familiar with the term removal action, sir?
   A: No.
   Q: Are you familiar with the term remedial action as EPA uses that term?

A: Yes.
   Q: Do you consider what's going on at this site to be considered remedial action?
   A: Yes.
   K. Campbell Dep. at 59, ls. 2–9.

remedial. Defendant's Memorandum In Support of Motion to Bifurcate Trial at 5–6. Plaintiff disputes this, claiming that its actions are consistent with the definition of removal. Plaintiff's Surreply Memorandum In Opposition to Motion to Bifurcate Trial at 8. This remains a factual dispute that cannot be resolved through a motion to bifurcate. Whether this issue should be bifurcated from the remaining issues for purposes of trial will now be addressed.

## C. *Bifurcation of CERCLA Actions*

Federal Rule of Civil Procedure 42(b) enables a court to bifurcate a trial between different claims and issues if it is convenient, does not prejudice either party, and it promotes judicial efficiency. *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996). "Bifurcation may therefore be appropriate where the evidence offered on two different issues will be wholly distinct . . ., or where litigation of one issue may obviate the need to try another issue." *Id.* (internal citations omitted.) Bifurcation is within the discretion of a trial judge and decided on a case-by-case basis. *Idzojtic v. Pennsylvania RR Co.*, 456 F.2d 1228, 1230 (3d Cir.1972). However, the separation of issues for trial is not to be routinely ordered. *Morse/Diesel v. Fidelity Deposit Co. of Maryland*, 763 F.Supp. 28, 35 (S.D.N.Y.1991) (citing Fed. R. Civ. P. 42(b), advisory committee note).

Defendant argues that CERCLA actions are "typically bifurcated by reason of their complexity." *Textron, Inc. v. Barber–Colman Co.*, 903 F.Supp. 1570, 1582 (W.D.N.C.1995). The Second Circuit has stated that "[l]iability may be decided first before the more complicated questions implicated in clean-up measures, which includes fixing the proportionate fault of liable parties. Bifurcation and summary judgment provide powerful legal tools which, by effectively isolating the issues to be resolved, avoid lengthy and perhaps needless litigation." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir.1993). Plaintiff responds that the CERCLA actions that have been bifurcated involved multiple defendants and complex liability issues. *See id.* at 719–20; *B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2d Cir.1996), *decision clarified and reh'g denied*, 112 F.3d 88 (1997). Here, only one defendant remains in the case. Additionally, plaintiff states that the CERCLA actions have been divided into a liability phase and a damages phase, rather than an initial phase separating a single element of CERCLA liability from the remaining liability and damages issues and attorneys' fees, as defendant requests. *See Alcan Aluminum*, 990 F.2d 711; *B.F. Goodrich*, 99 F.3d 505. To support its proposed bifurcation of a single issue, defendant points to the Third Circuit's approval of the trial court's bifurcation of the "relevant market" issue in an antitrust claim, despite plaintiff's objection that the market issue was "inextricably interwoven" with the merits of its antitrust claim. *See Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir.1992). Nevertheless, where there is a significant overlap in the evidence pertaining to the claims to be separated, bifurcation will not serve judicial economy. *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir.1984). " '[P]iecemeal litigation is not . . . favored,' and bifurcation is inappropriate 'in cases where the facts are so inextricably interwoven that (separation) is impossible or at least manifestly unfair.' " *Morse/Diesel*, 763 F.Supp. at 35 (internal citations omitted). In deciding whether to bifurcate, " 'courts often try to establish if the issues would involve the same witnesses or not.' " *Id.* (internal citation omitted).

Only two parties are left in this case. The parties agree that the remaining issues for trial under the CERCLA claim include (1) whether defendant is a responsible party under the statute and (2) whether plaintiff's clean up actions comply with the NCP. In addition, as the previous discussion shows, the RCRA claim also needs to be tried.

Resolving the issue of compliance with the NCP will entail presenting testimony and evidence on whether plaintiff appropriately investigated the spill site and analyzed remedial alternatives, complied with selection criteria in determining the appropriate remedy, selected a cost-effective remedy, and gave the public an opportunity to comment on the chosen remedy.

To establish whether defendant is a responsible party, the parties will present expert testimony on the nature and timing of the original spill and hazardous waste disposal. This testimony will also go towards establishing whether plaintiff complied with the NCP during its clean up, for how will the court be able to determine whether plaintiff appropriately investigated the spill site and selected the proper remedy without discussing the original spill? Despite defendant's contentions to the contrary, it seems that duplication of testimony and evidence would be unavoidable. This evidence would also be relevant to the resolution of the RCRA claim. Thus defendant's argument that bifurcating the trial in this manner may obviate the need for a second phase discussing these complex issues fails because the RCRA claim will need to be tried in any event. Additionally, reserving a second phase solely for allocation of damages—rather than resolving all the issues in one trial—would seem to unnecessarily prolong the litigation where one is not faced with a multitude of responsible defendants.

## III. CONCLUSION

Based on the above discussion, defendant's motion to bifurcate (doc. 353) is denied.

SO ORDERED.