The **PINAL CREEK GROUP,** consisting of **Phelps Dodge Miami, Inc., Inspiration Consolidated Copper Company,** and **BHP Copper, Inc.,** Plaintiffs,

v.

**NEWMONT· MINING CORPORATION; Canadian Oxy Offshore Production Co.;** and **Atlantic Richfield Company,** Defendants.

No. CIV91–1764 PHX–DAE (LOA).

United States District Court,
D. Arizona.

Sept. 24, 2003.

---

Charles J. Muchmore, Esq., Burch & Cracchiolo PA, Phoenix, AZ, Fredric D. Bellamy, Esq., Nicholas J. Wallwork, Esq., Stephen Alan Owens, Esq., George Hamilton King, Esq., Beshears Wallwork Bellamy, Phoenix, AZ, for Plaintiff.

Shane Ray Swindle, Esq., Michael P. Berman, Esq., Brown & Bain PA, Phoenix, AZ, Gerald S. Maltz, Esq., Haralson, Miller, Pitt & McAnally, PC, Tucson, AZ, Karl Michael Tilleman, Esq., Keller Rohrback PLC, Phoenix, AZ, Ernest John Getto, Esq., Michael George Romey, Damon Paul Mamalakis, Richard Scott Pearson, Jill N. Willis, Latham & Watkins, Los Angeles, CA, Steven B. Weatherspoon, Esq., Chandler, Tullar, Udall & Redhair, LLP, Tucson, AZ, Michael John Gallagher, Esq., Jeffrey Bates Groy, Esq., William Anthony Bianco, Dean C. Miller, Laura J. Nagle, Davis, Graham & Stubbs LLP, Sherry Marie Purdy, Esq., Denver, CO, James L. Lucari, Warrenville, IL, Richard K. Mahrle, Esq., Gammage & Burnham PLC, Michael P. Berman, Esq., Brown & Bain PA, Phoenix, AZ, John Dunning Titus, Esq., Gallagher & Kennedy PA, Phoenix, AZ, Kim E. Williamson, Esq., Kim E. Williamson PLC, Tucson, AZ, for Defendants.

## ORDER

ANDERSON, United States Magistrate Judge.

This matter arises on the motion of Defendant Atlantic Richfield Company ("Atlantic Richfield") to bifurcate trial on the issue of Atlantic Richfield's alleged "operator" and "arranger" liability for activities conducted at the facilities of Phelps Dodge Miami, Inc. ("Phelps Dodge" or "PDMI") and Inspiration Consolidated Copper Company ("Inspiration") within the Pinal Creek Drainage Basin, a hazardous waste site in Arizona. (document # 1333–1) Atlantic Richfield further requests that the Court implement "special procedures" to "streamline the presentation of evidence at trial." (document # 1333–2) Plaintiff BHP Copper, Inc. ("BHP"), and Defendants Canadian Oxy Offshore Production Co. ("Canadian Oxy") and Newmont Mining Corporation ("Newmont") support Atlantic Richfield's request for bifurcated trial on the issue of "operator" and "arranger" liability. Only PDMI and Inspiration oppose bifurcation. The Court will address the motion to bifurcate after discussing the background of this matter.

### BACKGROUND

Plaintiffs, a group of three mining companies, have engaged in the cleanup of the Pinal Creek Drainage Basin ("Pinal Creek Site"). Plaintiffs bring this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA") and the Arizona Water Quality Assurance Revolving Fund, Ariz.Rev.Stat. §§ 49–201–49–298 ("WQARF") to recover past "response costs" and for declaratory relief and/or monetary relief regarding potential future groundwater remediation costs. The Pinal Creek Site has been contaminated by nearly 100 years of mining including various mining practices at various locations by various mine operators. This litigation involves two main property divisions within the Pinal Creek Site: Property A and Property B. Property A is currently owned by PDMI and was formerly owned by Inspiration. Plaintiffs allege that Defendant Atlantic Richfield was a former "operator" and "arranger" of Property A and is liable for a substantial portion of cleanup costs that may otherwise be Inspiration's responsibility. On the other hand, Property B is currently owned by Plaintiff BHP, formerly owned by Defendant Canadian Oxy, and allegedly formerly operated by Defendant Newmont Mining. Atlantic Richfield's motion to bifurcate involves Property A. This case has been in active litigation for nearly twelve years[1] and it is in the best interests of the parties and the Court to resolve this complicated matter as expeditiously and as fairly as possible.

### ANALYSIS OF MOTION TO BIFURCATE

#### I. District Court's Authority to Bifurcate a Trial

Atlantic Richfield requests that the Court conduct an initial trial to determine whether

1. The Complaint was filed on November 5, 1991.

Atlantic Richfield is liable as an "operator" and/or "arranger" as to Property A which is currently owned by PDMI. Then, if necessary, the Court would conduct a second trial on allocation, damages and remaining issues regarding Property B.

Federal Rule of Civil Procedure 42(b), which authorizes the court to bifurcate a trial, provides that:

> The court, *in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy,* may order a separate trial of any claim, cross-claim, counterclaim, or third party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues always preserving inviolate the right to trial by jury.

*Id.* (emphasis added) Only one of Rule 42(b)'s requirements must be satisfied for the court to bifurcate a trial. *United States v. Shell Oil, Co.,* 1992 WL 144296, *11 (C.D.Cal. Jan.16, 1992)(citing *In re Paris Air Crash of March 3, 1974,* 69 F.R.D. 310 (C.D.Cal. 1975)). The main purpose of Rule 42(b) is to promote "efficient judicial administration." *Id.* (citing *Stoddard v. Ling–Temco–Vought, Inc.,* 513 F.Supp. 314 (C.D.Cal.1980)). The district court has inherent authority to manage a case "with economy of time and effort for itself, for counsel and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). In the CERCLA context, courts determine whether to bifurcate on a case-by-case basis. *United States v. Kramer,* 770 F.Supp. 954 (D.N.J. 1991).

Mindful of these principles, the Court will consider Atlantic Richfield's Motion to Bifurcate trial into two phases: Phase One: Atlantic Richfield's liability as an "operator" and/or "arranger" regarding activities at facilities owned by PDMI and Inspiration; and Phase Two: damages, allocation and the remaining issues.[2]

## II. Procedural History

■ The procedural history of this matter supports bifurcation and undermines the argument of PDMI and Inspiration that a bifurcated trial would be unfair. Since 1993, this matter has been structured into two phases separating the owner/operator liability issues from the issues of damages/allocation. (See, document # 271, Case Management and Discovery Order) In the 1993 Case Management Order, the Court stated that "it is the Court's intent in entering this Order to provide a mechanism for the efficient, cost-effective and timely discovery and resolution as between plaintiffs and ARCO [Atlantic Richfield] on the Control issues ..." (*Id.*) Hindsight, however, has proven otherwise.

In an October 2001 Memorandum which contained a section entitled "Phasing or Bifurcation of Trial", (which is recent in view of this case's long history), PDMI/Inspiration advised the Court that:

> PDMI and Inspiration support bifurcation of trial in this matter between (i) trial resolving liability and (ii) a trial resolving damages and allocation. PDMI and Inspiration support this bifurcation, which is consistent with the procedural history of this case, because this bifurcation enables the Court to render its initial determinations on the merits of the claims most quickly. This traditional bifurcation simply resolves the issues toward which the parties have devoted the last ten years.

(See, document # 969, October 19, 2001 Memorandum of PDMI and Inspiration Regarding Case Management and Scheduling at 12–13)

In the same memorandum, PDMI and Inspiration acknowledged that the complexity of this case made bifurcation appropriate, stating that "[a]dding additional issues, such as allocation, would necessarily complicate the initial trial ... [A]ny attempt to try the allocation issues in the same trial with the

---

**2.** The Court has not *sua sponte* addressed herein whether Plaintiff BHP's liability claims against Defendant Canadian Oxy and Defendant Newmont Mining should be bifurcated into a liability only phase and an allocation/damages phase regarding Property B because BHP's Response to Atlantic Richfield's motion did not formally request such relief. (See, document # 1394)

liability issues would significantly delay and elongate trial of the liability issues." (*Id.* at 13.) In support of bifurcation, PDMI and Inspiration detailed the benefits of such an approach. For example, PDMI and Inspiration explained that the damages and allocation issues would require different groups of expert witnesses which could turn a single trial into a "battle of the experts." (document #969 at 13) They further explained that "[t]rying the liability issues first also ensures that the parties do not have to go through the expense and difficulty of a complicated allocation proceeding without knowing precisely which parties will face financial responsibility for a portion of the cleanup costs." (*Id.* at 14)

Until the opposition by PDMI and Inspiration to the pending motion, all of the parties to this action, including PDMI and Inspiration, have consistently supported bifurcated trials. PDMI and Inspiration fail, however, to adequately explain the basis for the reversal of their position on bifurcation.

Earlier, in a 1997 Joint Motion to Amend Case Management Order, PDMI, Inspiration and Atlantic Richfield agreed to identify their witnesses and exhibits for trial concerning liability issues designated "Control" issues. (See, document #438, Joint Motion to Amend Case Management Order, granted on February 28, 1997, document #439.) Plaintiffs and Atlantic Richfield also jointly advised the Court of their intent to resolve the Control issues separately either by "motions for summary judgment, a mini-trial, a form of alternative dispute resolution, or some combination of the aforementioned mechanisms." (document #438 at 3) In keeping with the bifurcated approach, in 1999, Plaintiffs and Atlantic Richfield exchanged preliminary trial exhibit lists regarding Control issues. On April 3, 2000, Plaintiffs and Atlantic Richfield supplemented their preliminary trial exhibit lists. (document #784) The Case Management Order at that time designated the control issues as Phase One liability issues defined as "the claims and allegations in the Third Amended Complaint, paragraphs 45 to 56, and defenses thereto, as to (i) whether Defendant ARCO's predecessor, The Anaconda Company ('Anaconda'), by virtue of its relationship with Inspiration Consolidated Copper Company ('Inspiration') and/or the International Smelting and Refining Company ('International') was an operator of any portion of the 'Facility,' as that term is defined ...." (document #758 at 2) Issues of allocation were included in Phase Two. (document #758 at 3) The Case Management Order at that time provided for a separate trial of Phase One Issues. (document #271 at 5) On November 20, 2001, the Court issued an Amended Scheduling Order relaxing the bifurcation of discovery because, *inter alia,* the lack of discovery on damages and allocation has hindered meaningful settlement negotiations and has contributed to the undue delay in bringing about finality to this decade-long case. (See, document #979 at 2–3.) However, consistent with the history of bifurcation in this case, the Amended Scheduling Order also provided that the Court would consider bifurcating this case for trial upon completion of discovery. *Id.* at 7–8.

After discovery closed, Atlantic Richfield moved for summary judgment concerning Phase One liability consistent with the bifurcated approach. The Court granted Atlantic Richfield summary judgment on all claims except for Plaintiffs' claims for direct operator/arranger liability. (See, document #1219, #1220, #1221.) Atlantic Richfield now seeks to bifurcate trial on the remaining Phase One liability issues relating to Atlantic Richfield's alleged operator/arranger status at the facilities owned by Inspiration and PDMI.

For nearly ten years the parties have proceeded as though Phase One liability issues will be tried first and separately in bifurcated trials. Thus, the Court finds that there has been fair notice of bifurcation to all parties and that there would be no undue prejudice to bifurcate the trials into phases in the same manner that the parties have contemplated throughout this case. This finding alone permits the Court to bifurcate the trial under FED.R.CIV.P.42(b). The Court, however, will further discuss its decision to bifurcate.

## III. Bifurcating Liability from Allocation/Damages in a CERCLA Action

CERCLA is designed to facilitate the cleanup of hazardous waste sites by placing ultimate financial responsibility for cleanup on those responsible for hazardous wastes. To that end, 42 U.S.C. § 9607(a) authorizes suits against "responsible parties" to recover costs associated with cleanup of hazardous waste sites. See, *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1300 (9th Cir.1997). In 1986, Congress amended CERCLA to clarify that it also included a claim for contribution. *Id.* Thus, after a site has been cleaned up, 42 U.S.C. § 9613(f) permits a party to seek contribution from other potentially responsible parties to recover costs associated with hazardous waste remediation. See, 42 U.S.C. § 9613(f). In contribution cases, once the court identifies the responsible parties, the "court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.*

Parties seeking contribution under § 9613 must first look to 42 U.S.C. § 9607 to establish the elements of liability of the defendants. The relationship between § 9607 and § 9613 has been described as follows, "[u]nder CERCLA's scheme, section 107 [Title 42 U.S.C. § 9607] governs liability, while section 113(f) [Title 42 U.S.C. § 9613(f)] creates a mechanism for apportioning that liability among responsible parties." *Pinal Creek Group*, 118 F.3d at 1302 (citing *U.S. v. AS-ARCO, Inc.*, 814 F.Supp. 951, 956 (D.Colo. 1993)). Thus, recovery of response costs under § 9607 and § 9613 is a two-step process. First, plaintiff must prove that a defendant is liable using the elements in § 9607(a). Then, if a defendant is found liable, the court ap-

portions the defendant's share of liability in an equitable manner. See, 42 U.S.C. § 9613(f).

To establish liability under 42 U.S.C. § 9607(a), a party must prove that: (1) the defendant falls within one of four categories of covered parties (e.g., a former or present owner, operator, arranger or transporter), 42 U.S.C. § 9607(a); (2) there was a "release or threatened release" of a hazardous substance from defendant's facility, 42 U.S.C. § 9607(a)(4); (3) the release or threatened release "caused the incurrence of response costs" by the plaintiff, 42 U.S.C. § 9607(a)(4); and (4) the costs were "necessary costs of response ... consistent with the national contingency plan ('NCP')." 42 U.S.C. § 9607(a)(4)(B).

If a party does not constitute a potentially responsible party under § 9607(a), the court need not reach the allocation issues under § 9613(f). Accordingly, in this case the initial discovery and motion practice was divided into two phases: (1) Phase One–determining the defendants' status as "responsible" parties under § 9607(a); and (2) Phase Two—determining "all remaining issues," including damages and allocation. In keeping with the procedural history of this matter, separating the liability determination from the allocation/damages issues will facilitate the resolution of this matter in a fair and expeditious matter.[3]

First, resolution of liability issues under § 9607 may eliminate or limit the remaining issues of damages and allocation. Second, the complexity of this litigation, which involves multiple parties' polluting conduct spanning over ninety years, would render a single trial unmanageable and would impose

---

**3.** In a recent Order, the Court requested supplemental briefing regarding the issue of causation. After review of the parties' supplemental briefing and the relevant law, the Court recognizes that Plaintiffs need not prove causation to establish CERCLA liability under § 9607. In short, a plaintiff can prove that a defendant is liable as a responsible party (owner, operator, arranger, transporter) without proving that the defendant caused the release at the facility. Rather, plaintiff need only prove that the defendant's hazard-

ous substances were deposited at the site from which there was a release and that *the release* caused the incurrence of response costs. *California v. Campbell*, 319 F.3d 1161 (9th Cir.2003). Although causation is not relevant to a defendant's liability, the Court may consider causation in allocating response costs. 42 U.S.C. § 9613(f). Because causation is an equitable factor that the Court may only consider in allocating response costs, there is no basis for bifurcating causation from the rest of the trial.

an unnecessary and avoidable hardship on the visiting trial judge and counsel, some of whom office and reside out of district. Finally, all parties, except PDMI and Inspiration, agree that first determining which parties may be liable under § 9607 is a logical starting point. In fact, throughout much of this case, all of the parties, *including* PDMI/Inspiration have supported bifurcating the trial into Phase I—liability, and Phase II—allocation and damages.

PDMI and Inspiration now claim that bifurcation is inappropriate and contravenes Ninth Circuit law. PDMI and Inspiration state that although the Ninth Circuit has not specifically addressed bifurcation in CERCLA recovery actions, it has rejected bifurcation of liability and damages in other contexts. See, *Miller v. Fairchild Indus., Inc.* 885 F.2d 498 (9th Cir.1989); *United Air Lines, Inc. v. Wiener,* 286 F.2d 302, 306 (9th Cir.1961). PDMI and Inspiration's citation of cases regarding bifurcation in contexts other than a CERCLA matter are not controlling.

PDMI and Inspiration further argue that other circuits have denied bifurcation in "nearly every" CERCLA recovery case. See, *Anspec Co., Inc. v. Johnson Controls, Inc.,* 788 F.Supp. 951, 955 (E.D.Mich.1992)(bifurcation denied because CERCLA "liability and damages issues are inextricably intertwined under the statutory scheme."); *ABB Indus. Sys., Inc. v. Prime Techn. Inc.,* 32 F.Supp.2d 38, 44 (D.Conn.1998)(bifurcation denied in CERCLA trial because duplication of testimony and evidence would be unavoidable); *United States v. Mottolo,* 107 F.R.D. 267, 270 (D.N.H.1985)(bifurcation would not further judicial economy, convenience or expedition).

PDMI and Inspiration's claim as to the breadth of CERCLA cases denying bifurcation is simply not accurate. The Court's own research has revealed several CERCLA contribution cases wherein the trial court bifurcated the trial into a liability phase and a damage/allocation phase. See, *Kalamazoo River Study Group v. Menasha Corp.,* 228 F.3d 648, 657 (6th Cir.2000); *Kalamazoo River Study Group v. Rockwell International,* 274 F.3d 1043, 1046 (6th Cir.2001)(stating that district court bifurcated contribution case against a single remaining defendant into two stages "with the first limited to liability and the second focused on the allocation of response costs."); *Amoco Oil Co. v. Borden,* 889 F.2d 664, 667 (5th Cir.1989)(stating that "[b]ecause of the complexity of CERCLA cases, which often involve multiple defendants and difficult remedial questions, courts have bifurcated the liability and remedial, or damages, phases of CERCLA litigation ... In doing so, disputed factual and legal issues pertaining only to liability are resolved before deciding the more complicated technical questions of appropriate cleanup measures and the proportionate fault of liable parties."); *United States v. Hardage,* 750 F.Supp. 1460, 1462 (W.D.Oklahoma 1990)(bifurcated trial in CERCLA contribution case).

The Court acknowledges that neither its own research nor that of PDMI and Inspiration has likely uncovered every CERCLA case involving the decision to bifurcate. Thus, PDMI's and Inspiration's assertion that circuit courts have denied bifurcation in *nearly every* CERCLA case is overly broad. Additionally, the cases which PDMI and Inspiration cite are distinguishable from the case at bar. In *ABB Industrial Systems v. Prime Technology, Inc.,* 32 F.Supp.2d 38 (D.Conn.1998), the court did, indeed, deny a motion to bifurcate a CERCLA trial. However, the parties sought to bifurcate the case in a different manner than that proposed in Atlantic Richfield's motion to bifurcate in this case. Specifically, in *ABB,* the court denied a motion to bifurcate into an initial trial on whether Plaintiff complied with the National Contingency Plan in its cleanup for which it sought contribution, and a subsequent trial on the remaining liability issues under § 9607(a), damages and attorneys' fees. *ABB,* 32 F.Supp.2d 38, 40. In denying the motion to bifurcate, the court noted that only two parties—one plaintiff and one defendant—remained in the case and that defendant was not seeking to bifurcate the case

into a liability phase and a damages phase as courts have done in other CERCLA cases. *Id.* at 43

Unlike *ABB*, this case involves three plaintiffs and three defendants with roughly 90 years of polluting history making it much more complex than the *ABB* case. Second, Atlantic Richfield requests bifurcation into a liability phase and a damages phase, the same type of bifurcation which *ABB* suggested courts have approved in other CERCLA cases. In view of the foregoing, *ABB* does not support PDMI's and Inspiration's opposition to bifurcation in this case.

This case is also distinguishable from *U.S. v. Mottolo*, 107 F.R.D. 267, 270 (D.N.H.1985). In *Mottolo,* the court denied a motion to divide an action to recover cleanup costs into multiple stages. There, plaintiff sought to divide the case into a first stage to recover cleanup costs already incurred and to receive an "open-ended judgment in declaring defendants liable for all future cleanup activities." *Id.* The initial trial would be followed by a trial for damages for future cleanup costs. *Id.* The court found that a bifurcated trial would result in duplication of evidence and testimony because the requirements to recover past and future cleanup costs overlap. *Id.* The court further found that plaintiff's "rolling accounting approach" to damages would be unfair because defendant would be forced to defend "liability in a case with virtually unlimited damage exposure for ongoing cleanup activities." *Id.*

Again, the plaintiff in *Mottolo* sought to divide the trial in a different manner than this case. In view of the case-specific inquiry required to determine whether bifurcation is appropriate, *Mottolo* does not preclude bifurcation in this case.

District courts decide whether to bifurcate on a case-by-case basis. See, *United States v. Kramer,* 770 F.Supp. 954 (D.N.J.1991). Thus, the fact that courts have denied bifurcation in some, many or, nearly every CERCLA case does not mean that this Court should deny bifurcation on the facts and unique history of this case.

PDMI and Inspiration also claim that bifurcation would be unfair to them. PDMI and Inspiration contend that the Court must determine liability by considering the totality of the circumstances surrounding the copper mining, smelting and refining activities that have contaminated Pinal Creek Basin. Similarly, PDMI and Inspiration state that the allocation, or the damages phase, is an equitable phase during which the Court should again consider the totality of the evidence. Thus, PDMI and Inspiration claim that bifurcation into a liability phase and a damages phase would either result in substantial duplication or the presentation of evidence in a "vacuum", depriving these Plaintiffs the opportunity to prove all of the elements of their contribution case. Again, this argument is not convincing. As discussed above, a contribution action involves two steps—determining liability and allocating damages among liable parties according to equitable factors. These determinations involve different facts. For example, a court may not consider causation in making a liability determination but may do so in allocating liability. See, *Kalamazoo,* 228 F.3d 648 (bifurcating CERCLA contribution case into a liability and allocation phase.)

Plaintiffs PDMI and Inspiration are the only parties who oppose bifurcation. The Court finds that bifurcation is appropriate in view of the complexity of this contribution action, bifurcation would be more equitable to Atlantic Richfield which may have no liability in this and the other Defendants and not unduly unfair to Plaintiffs, and in view of the fact that this case proceeded for nearly ten years on the premise that the trial would be bifurcated pursuant to the parties' agreement during most of the discovery and motions practice. Accordingly, the Court will grant Atlantic Richfield's Motion to Bifurcate trial on Plaintiffs' "operator" and "arranger" claims regarding activities conducted at the facilities owned by PDMI and Inspiration within the Pinal Creek Site.

### *MOTION FOR TRIAL LIMITING PROCEDURES*

In the event that the Court bifurcates the trial, Atlantic Richfield requests that the

Court impose limitations on the trial of the liability issues in Phase One. The Court will deny this motion without prejudice as that the topic of trial limiting procedures is more suitable for consideration during a pre-trial conference.

In accordance with the foregoing,

**IT IS ORDERED** that the Motion of Atlantic Richfield to bifurcate trial on the issue of Atlantic Richfield's alleged "operator" and "arranger" liability for activities conducted at the facilities of Phelps Dodge Miami, Inc. within the Pinal Creek Drainage Basin, a hazardous waste site in Arizona (document # 1333–1) is **GRANTED**.

**IT IS FURTHER ORDERED** that the trial in the matter is bifurcated as follows: Phase One: the issue of Atlantic Richfield's alleged "operator" and "arranger" liability for activities conducted at the facilities of Phelps Dodge Miami, Inc. and Inspiration Consolidated Copper Company within the Pinal Creek Drainage Basin, a hazardous waste site in Arizona; and Phase Two: allocation, damages and all remaining issues including the liability issues regarding Property B.[4]

**IT IS FURTHER ORDERED** that Atlantic Richfield's Motion for Trial Limiting Procedures (document # 1333–2) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that counsel, either separately or jointly, shall promptly notify the undersigned in writing when all of the pending dispositive motions have been adjudicated by the assigned district judge, the Hon. David A. Ezra of the District of Hawaii, shall request a Final Scheduling Conference and shall set forth therein the issues that should be decided at the Final Pretrial Conference on the Phase One trial regarding Atlantic Richfield's alleged "operator" and "arranger" liability.